**Paul GRAVES t/a Paul Graves Construction, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (NEWMAN), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 7, 1994.

Decided Dec. 8, 1995.

---

Tracy Famous, for petitioner.

Frederick C. Timm, for respondent Newman.

Before COLINS, President Judge, and DOYLE (P.) and NEWMAN, JJ.

NEWMAN, Judge.

Paul Graves t/a Paul Graves Construction (Employer) appeals an order of the Workmen's Compensation Appeal Board (Board) that reversed the referee's decision denying benefits to Steven Newman (Claimant) under The Pennsylvania Workmen's Compensation Act (Act).[1] We reverse.[2]

Claimant was a prisoner who escaped from custody while participating in a work release program in the Norristown area. In August 1988, he began working as a roofer for Employer. On March 10, 1989, he fell off a roof while installing a chimney, and fractured his right heel bone.

Claimant commenced this action by filing a claim petition on April 6, 1989. Employer filed an answer in which Employer asserted that Claimant was returned to prison after the accident and was therefore unavailable for work.

The referee held numerous hearings, and on December 4, 1990, he issued a decision denying benefits to Claimant. The referee's decision contained the following relevant findings of fact:

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031.

2. This case was assigned to the authoring judge on January 20, 1995.

3. On March 10, 1989 the Claimant was performing his duties as a roofer on behalf of the Defendant. In the performance of these duties, the Claimant was installing a chimney while standing on the steepest part of the roof of a building under construction. . . .

4. While standing on the roof in question, the Claimant slipped off the roof, and ultimately fell to the ground landing on his feet.

5. As a result of the incident described in Finding of Fact #4 the Claimant sustained a fracture of the right calcaneous (sic) (right heel bone).

.　.　.　.　.

9. On May 14, 1989, the Claimant was returned to prison. At this time, he is still in prison.

10. On March 13, 1990, the Claimant was examined on behalf of the Defendant by Dr. Gary Muller, a board certified orthopedic surgeon. Dr. Muller confirmed that the Claimant suffered a non-displaced fracture of the right calcaneous (sic). . . .

11. Dr. Muller opined that the Claimant had recovered and was capable of returning to work *with restriction.*

.　.　.　.　.

13. Defendant presented no evidence whatsoever to show that work was available to the Claimant which he was capable of performing and further presented no evidence that had it not been for his incarceration, he could have secured such alternate employment.

Referee's Decision and Order of December 4, 1990 at 2–3 (emphasis in original.

After making his findings of fact, the referee presented the following discussion:

The Referee cannot ignore the fact that the Claimant committed a violation of Law (a felony) when he escaped from prison and this violation of the law continued until the Claimant was returned to prison in May of 1989. But for the fact of this continued violation of the Law the Claim-

ant would not have had cause to be on the roof in question and obviously would not have fallen off the roof sustaining injury to his right foot and ankle. Therefore, it is apparent that the Claimant's violation of the Law is the cause of his right ankle injury which he sustained on March 10, 1989.

It would fly in the face of reason to award Compensation benefits to an individual such as the Claimant which, in essence, would reward him for his successful escape from prison and place him in a superior financial position relative to an inmate who faithfully served his sentence.

Decision and Order at 3–4.

Consequently, the referee determined that under the circumstances of this case, the Claimant was not entitled to benefits under the Act.

Claimant appealed the referee's decision to the Board, which reversed, based on its determination that Employer had failed to meet its burden of proof that Claimant's injury was caused by a violation of law.

■ On appeal, the sole issue raised by Employer is whether the Board erred as a matter of law in reversing the referee's decision that Claimant's injury occurred while in the commission of a felony or misdemeanor, and that such continuing violation of law negated his entitlement to benefits.[3]

Section 301(a) of the Act, provides:

Every employer shall be liable for compensation for personal injury to, or for the death of each employe. . . . Provided, That no compensation shall be paid when the injury or death . . . is caused by the employe's violation of the law, . . . but the burden of proof of such fact shall be upon the employer. . . .

77 P.S. § 431.

■ An employer does not meet its burden of proof merely by showing that a claimant committed a violation of law. The employer is required to prove, by more than a

**3.** Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Bethenergy Mines, Inc. v. Workmen's Compensation Appeal Board (Skirpan),* 132 Pa.Commonwealth Ct. 277, 572 A.2d 838 (1990), *aff'd,* 531 Pa. 287, 612 A.2d 434 (1992).

preponderance of the evidence, that a causal connection exists between a violation of law and the claimant's injuries. *Franks v. Workmen's Compensation Appeal Board (SEPTA)*, 148 Pa.Commonwealth Ct. 25, 613 A.2d 36 (1991), *petition for allowance of appeal denied*, (No. 87 E.D.Alloc. Docket 1992, filed October 5, 1992.) Accordingly, in cases where an employee is killed or injured when driving while intoxicated, the employer must establish that the employee's intoxication is the cause of the accident; otherwise, the claimant is entitled to benefits. *See*, e.g., *Kovalchick Salvage Co. v. Workmen's Compensation Appeal Board (St. Clair)*, 102 Pa.Commonwealth Ct. 562, 519 A.2d 543 (1986); *Oakes v. Workmen's Compensation Appeal Board (Pennsylvania Elec. Co.)*, 79 Pa.Commonwealth Ct. 454, 469 A.2d 723 (1984).

In the instant matter, Employer argues that Claimant violated Section 5121(a) of the Crimes Code (Escape), which states in relevant part:

(a) Escape. A person commits an offense if he unlawfully removes himself from official detention or fails to return to official detention following temporary leave granted for a specific purpose or limited period.

18 Pa.C.S. § 5121.

■ An offense under Section 5121(a) is graded as a felony of the third degree or a misdemeanor of the second degree. Placement in a work release program is within the meaning of "official detention" for purposes of this section. *Commonwealth v. Edwards*, 407 Pa. Superior Ct. 178, 595 A.2d 183 (1991).

■ Claimant argues that Employer has failed to meet its burden of proof that his prison escape is causally related to the injuries he sustained when he fell off a roof. There is no question that under a strict causation analysis, Claimant would be entitled to benefits. However, under the unusual circumstances of this case, the application of a causation analysis, and its attendant result shocks the conscience. When courts interpret statutes, they are required to presume that the General Assembly did not intend a result that is absurd or unreason-

able. Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922. We agree with the referee that to grant Claimant benefits is to reward him for his prison escape.

■ Here, Claimant's illegal act of escaping from official detention enabled him to obtain employment in the first place. This situation is different from one where a claimant is alleged to have committed a violation of law while in the course of his or her employment. Nevertheless, we expressly limit our holding to the proposition that an escape from official detention renders a claimant ineligible for benefits under the Act. We do not hold that any other violation of law committed prior to employment leads to a similar result. This holding balances the legitimate needs of employees with society's interest in ensuring that the workmen's compensation system is not used to the advantage of prison escapees.

For these reasons, we reverse the decision of the Board.

### ORDER

AND NOW, December 8, 1995, we reverse the order of the Workmen's Compensation Appeal Board.

DOYLE, Judge, dissenting.

Respectfully, I dissent.

The only authority the majority cites for the proposition that claimant's status as an escapee should preclude him from receiving worker's compensation benefits is that to allow such a result "shocks the conscience." In my view, that is simply not authority, and denying a claimant benefits on those grounds frustrates the clear intent of the Workers' Compensation Act.[1]

Even the majority must allow that under a strict causation analysis claimant would be entitled to benefits. Phrased differently, the majority admits that if we follow Section 301(a) of the Workers' Compensation Act, which contains a causation requirement that has been judicially determined to mean that a violation of the law must be the proximate

1. Act of June 2, 1915 P.L. 736, *as amended*, 77 P.S. § 431.

or legal cause of the injury,[2] claimant should prevail here. Yet, he is denied benefits.[3]

Further, the majority fails to acknowledge that claimant can be punished for his escape. That punishment, however, is, and properly should be, confined to the criminal justice system. In short, it is not the function of the Workers' Compensation Act to punish criminals;[4] the public's remedy for claimant's escape is in Section 5121 of the Crimes Code, 18 Pa.C.S. § 5121, making an escape either a felony of the third degree, punishable by up to seven years imprisonment,[5] or a misdemeanor of the second degree, punishable by up to two years of imprisonment.[6]

Further, I am deeply troubled by the constitutional ramifications of the majority's position. Our United States Supreme Court has recently held that double jeopardy can apply in the context of an administrative proceeding where the action taken appears to be an additional punishment for criminal conduct. *Department of Revenue of Montana v. Kurth Ranch*, 511 U.S. ——, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994). In *Kurth*, members of the Kurth family were arrested after their farm was raided and marijuana plants were discovered there. The plants were later confiscated and destroyed. Thereafter, in a separate tax proceeding, state authorities attempted to collect a tax for the possession and storage of dangerous drugs. The tax could be collected only after all state or federal fines or forfeitures were satisfied. The Kurths argued successfully in a bankruptcy court proceeding that the Montana state tax, part of which was eight times the product's fair market value, was a form of double jeopardy. The circuit court and the United States Supreme Court agreed. In addition to the tax's high rate and deterrent purpose, neither of which alone was determined to render the state tax constitutionally infirm, the High Court was also influenced, *inter alia*, by the fact that the imposition of the tax was conditioned upon a crime and was exacted only after arrest for the identical conduct which gave rise to the tax obligation initially. In this instance, the act of employing the Workers' Compensation Act to mete

---

2. *See e.g., Kovalchick Salvage Co. Workmen's Compensation Appeal Board (St. Clair (Admx.) Williams)*, 102 Pa.Cmwlth. 562, 519 A.2d 543 (1986) (employee who was driving while legally intoxicated granted benefits because employer did not prove that intoxication caused claimant's accident); *Franks v. Workmen's Compensation Appeal Board (SEPTA)*, 148 Pa.Cmwlth. 25, 613 A.2d 36 (Cmwlth.1991), (employee who was injured while being arrested for theft of employer's bus fares granted benefits because injury occurred not while employee was stealing funds but while being arrested for stealing funds); *Webber v. Borough of Midway*, 205 Pa.Superior Ct. 464, 211 A.2d 45 (1965) (employee who was injured while doing work under an illegal contract with borough granted benefits because of illegality of contract was not cause of injury).

3. The reasoning of the referee's decision, with which I strongly disagree, is found in the short but succinct discussion portion of the referee's opinion which I quote here verbatim:

*DISCUSSION*
The Referee cannot ignore the fact that the Claimant committed a violation of Law (a felony) when he escaped from prison and this violation of the Law continued until the Claimant was returned to prison in May of 1989. But for the fact of this continued violation of the Law the Claimant would not have had cause to be on the roof in question and obviously would not have fallen off the roof sustaining injury to his right foot and ankle.

Therefore, it is apparent that the Claimant's violation of the Law is the cause of his right ankle injury which he sustained on March 10, 1989.

4. I do note that Section 8 of the Act of July 2, 1993 P.L. 190 (Act 44), amended Section 306(a)(2) of the Workers' Compensation Act, 77 P.S. § 511(2), by adding the following language: "Nothing in this act shall require payment of compensation for any period during which the employe is incarcerated after a conviction." This amendment has been held to permit an employer to cease paying benefits to an employee who is incarcerated even where the initial payment of benefits preceded the criminal act and resultant conviction. *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 664 A.2d 1081 (Pa.Cmwlth.1995). Thus, under the amendment, as construed in *Banic*, Claimant would not be entitled to benefits if, as a result of his escape, he were reincarcerated. His status, however, is *dehors* the record and, accordingly, will not be considered further, except to note the referee's finding No. 9, which states: "On May 14, 1989, the Claimant was returned to prison. At this time [12–21–90], he is still in prison."

5. Section 1103(3) of the Crimes Code, 18 Pa.C.S. § 1103(3).

6. Section 1104(2) of the Crimes Code, 18 Pa.C.S. § 1104(2).

out a penalty similarly results in a constitutional infirmity. The loss of worker's compensation benefits to one whose injury prevents him from working is a "heavy tax." The majority's goal in construing the Act as it has is to deter escapes from prison but would apply presumably even to "escapees" from legitimate work-release programs. The "tax" here, *i.e.*, the denial of compensation, is certainly predicated upon the criminal act inasmuch as any other worker who is injured in connection with his employment is entitled to benefits. These facts, in my view, are sufficient to establish a constitutional infirmity under *Kurth*.

In summary, I certainly do not condone the claimant's act of escape, but I, nonetheless, cannot support the imposition of what is, in essence, a criminal sanction, when a mechanism already exists to punish claimant's non-work related criminal act, and for worker's compensation purposes is legally irrelevant.