810 A.2d 99

The REINFORCED EARTH COMPANY,

v.

WORKERS' COMPENSATION APPEAL
BOARD (ASTUDILLO),

Appeal of the REINFORCED EARTH COMPANY AND
STATE WORKERS' INSURANCE FUND.

No. 124 MAP 2000.

Supreme Court of Pennsylvania.

Argued Nov. 13, 2001.

Resubmitted June 3, 2002.

Decided Nov. 6, 2002.

Joseph F. Frattone, Philadelphia, Stephen J. Harlen, Haverford, for appellant, Reinforced Earth Co./SWIF.

John J. Stanzione, Downingtown, for appellee, Juan Carlos Astidillo

James A. Holzman, Harrisburg, Amber M. Kenger, Mechanicsburg, for appellee, W.C.A.B.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice CAPPY.

In this appeal of The Reinforced Earth Company and its insurer, the State Workers' Insurance Fund (collectively, "Reinforced Earth") we consider (1) whether the Commonwealth Court erred in holding that public policy does not exclude the appellee, Juan Carlos S. Astudillo ("Claimant"), an unauthorized alien, from receiving relief under the Pennsylvania Workers' Compensation Act [1]; and (2) assuming Claimant's eligibility to receive benefits in the first instance, whether the Commonwealth Court's decision that Reinforced Earth failed to establish that it is entitled to a suspension of the benefits awarded him is contrary our holding in *Banic v. Workmen's Compensation Appeal Bd. (Trans–Bridge Lines, Inc)*, 550 Pa.276, 705 A.2d 432 (1997). We conclude that Claimant is not barred from the Act's relief for reasons of public policy and

[1]. Act of June 2, 1915, P.L. 736 (as amended 77 P.S. §§ 1–1041.4,2501–2626 (the "Act")).

that our decision in *Banic* applies to determining whether Reinforced Earth is entitled to a suspension of Claimant's total disability compensation. Accordingly, the order of the Commonwealth Court is affirmed, albeit for reasons which differ from those relied upon below, and this case is remanded to the Workers' Compensation Judge ("WCJ") for further proceedings on the issue of a benefits suspension.

Claimant filed a Claim Petition under the Act, alleging that he had been injured in the course of his employment with Reinforced Earth. Reinforced Earth filed an Answer to the Claim Petition, denying Claimant's allegations.

The WCJ held hearings in January and September 1995. Claimant's evidence included his testimony before the WCJ, his own deposition, and the deposition testimony of his treating physician, James B. Stephenson, M.D. Reinforced Earth countered Claimant's medical evidence with the deposition testimony of Armando A. Mendez, M.D., who examined Claimant on one occasion.[2] With Claimant's agreement, Reinforced Earth also submitted the Affidavit of M. Frances Holmes, the Assistant District Director Examinations, for the United States Department of Justice, Immigration and Naturalization Service ("INS"), Philadelphia District, which stated that "[a]ccording to our records Alien number A90 237 990 on the copy of the Alien Registration Card ... does not relate to J. Carlos S. Astudillo. After a complete name search on our computer, we have no record of Mr. Astudillo." (R. 192a–193a).

Based on the foregoing evidence, the WCJ found the following facts. Claimant initially immigrated to the United States of America in 1988, entering California from Mexico, and moved to Pennsylvania in 1990. The documents Claimant obtained and presented to Reinforced Earth in order to secure employment were invalid, not having been issued by the INS.

Claimant worked for Reinforced Earth as a maintenance helper. In this capacity, he cut and welded iron and repaired motors, and was required to climb scaffolds and ladders and

2. While the WCJ accepted Dr. Stephenson's testimony and opinions, the WCJ rejected Dr. Mendez's testimony and opinions as neither credible nor persuasive.

lift heavy steel beams. On May 20, 1994, as he was working, Claimant was struck in and about the head, neck and back by a steel beam, and was rendered unconscious. Claimant was taken to the hospital, and came under the care of Dr. Stephenson both during and after his hospital stay. Dr. Stephenson diagnosed Claimant as having sustained a concussion, a mild head injury and an acute cervical and lumbro-sacral strain and sprain. Over the ensuing months, Claimant experienced headaches, dizziness, loss of balance, trouble sleeping, and upper and lower back pain. Upon Dr. Stephenson's recommendation, Claimant commenced physical therapy treatments in June 1994, and consulted an ear, nose and throat specialist and a neurosurgeon thereafter. Dr. Stephenson last saw Claimant on March 14, 1995. As of that date, Dr. Stephenson maintained a diagnosis of chronic cervical and lumbro-sacral sprain and strain, and concluded that Claimant was unable to perform the duties of his pre-injury job. Dr. Stephenson testified that Claimant would have to avoid climbing on ladders and scaffolds, and restricted his lifting to less than 20 to 25 pounds. Claimant never returned to Reinforced Earth's employ. On September 24, 1994, with the execution of a Separation Agreement and Release, which preserved Claimant's rights under the Act, Claimant's employment relationship with Reinforced Earth was terminated.

The conclusions of law the WCJ reached were as follows. First, the WCJ concluded that even "[a]ccepting that Claimant as an alien did not have proper [INS] documentation to work for [Reinforced Earth], such illegal alien status at the time of injury does not bar relief to the Claimant under the [Act]." (R. 199a).[3] Second, the WCJ concluded that Claimant met his

3. Claimant does not dispute the WCJ's characterization of his documents or his immigration status. The WCJ's findings and legal conclusion in this regard are premised on Claimant's failure to present to Reinforced Earth the documents the federal Immigration Reform and Control Act ("IRCA") requires a non-citizen to have in order to show that he is authorized for employment in this country. *See* 8 U.S.C. § 1324a. Under the IRCA, an alien who is not "lawfully admitted for permanent residence" or "authorized to be so employed" in the United States is an "unauthorized alien". 8 U.S.C. § 1324a(h)(3). Therefore, in the present appeal, we refer to Claimant as an "unauthorized alien".

burden of proof, establishing all of the elements of compensability by substantial and competent evidence. Third, the WCJ concluded that under the circumstances, Reinforced Earth presented a reasonable basis for contest.

Accordingly, the WCJ circulated an order on November 26, 1997, granting Claimant's Claim Petition, and ordering Reinforced Earth to pay Claimant compensation for total disability at the rate of $384.86 per week commencing as of May 21, 1994 and continuing thereafter until liability is altered pursuant to law; to pay all of Claimant's related reasonable and necessary medical expenses, including those Claimant had submitted, subject to the Act's limitations; to remain responsible for Claimant's medical expenses; and to pay the litigation costs.

Reinforced Earth appealed to the Workers' Compensation Appeal Board ("Board"), objecting to the WCJ's first and second conclusions of law. Without taking additional evidence, the Board affirmed the WCJ's decision and order. With respect to Reinforced Earth's argument that Claimant's status as an unauthorized alien barred him from the Act's coverage, the Board determined that Reinforced Earth failed to prove that Claimant's alleged violation of the law—the use of invalid documents to secure employment—was causally related to his injury.[4] In addition, the Board stated that any determination that Claimant's immigration status alone would

The IRCA creates an employment verification system under which an employer must execute a form, attesting that it has examined certain requisite documents which show an alien employee's identity and employment authorization. 8 U.S.C. § 1324a(b). If an employer fails to comply with these verification requirements, it can be sanctioned with civil penalties, 8 U.S.C. § 1324a(e)(4), and can be held criminally liable for pattern or practice violations. 8 U.S.C. § 1324a(f). Moreover, the IRCA makes it unlawful for any person knowingly to use, attempt to use, possess, obtain, accept, receive or provide counterfeit, altered, forged, or falsely made documents in order to satisfy an employer's attestation requirements. 8 U.S.C. § 1324c(a)(2).

4. For purposes of clarity, we observe that Reinforced Earth pointed out in the Petition for Review it filed in the Commonwealth Court that the Board's conclusion in this regard was irrelevant because it had not advanced a defense to the Claim Petition under Section 301 of the Act, 77 P.S. § 431. (Petition for Review, para. 7).

vitiate his entitlement to compensation benefits would violate the humanitarian purposes of the Act. Next, the Board concluded that the WCJ correctly decided that Claimant met his burden of proof, showing that he was totally disabled for all periods covered by the record. Finding that Reinforced Earth failed to show Claimant's possible earnings, the Board then rejected Reinforced Earth's argument that a suspension of benefits was in order because Claimant could not show that he was disabled throughout the proceedings. Finally, of the view that Claimant's employability was not yet an issue in light of the WCJ's conclusion that Claimant was totally disabled, the Board also rejected Reinforced Earth's argument that the WCJ should have suspended Claimant's benefits because his unauthorized alien status prevents him from ever returning to work or from making good faith efforts to secure employment.

Reinforced Earth appealed to the Commonwealth Court. Reinforced Earth argued, *inter alia*, that the Board's ruling that Claimant's status as an unauthorized alien does not bar him from receipt of the Act's relief is inconsistent with the Commonwealth Court's decision to refuse workers' compensation to an escaped prisoner in *Graves v. Workmen's Compensation Appeal Bd. (Newman)*, 668 A.2d 606 (Pa.Cmwlth.1995), and that assuming arguendo that Claimant may be awarded workers' compensation benefits, due to Claimant's immigration status which renders him unemployable, it is entitled to a suspension of the benefits.

A unanimous panel of the Commonwealth Court affirmed the Board's order. *The Reinforced Earth Company v. Workers' Compensation Appeal Bd. (Astudillo)*, 749 A.2d 1036 (Pa.Cmwlth.2000).

After rejecting Reinforced Earth's assertion that the IRCA forecloses the grant of workers' compensation benefits,[5] the

5. In its Commonwealth Court appeal, Reinforced Earth argued that the IRCA preempts state law, thereby requiring the Pennsylvania courts to find that Claimant as an unauthorized alien cannot be considered an "employee" as defined by the Act. Reinforced Earth also argued that since it has a protected property interest in the Act's remedy of

Commonwealth Court considered Reinforced Earth's request that the court "employ the public policy exception [it] applied in [*Graves*]" to unauthorized aliens. *Id.* at 1038. The court commenced its analysis with the following description of the decision it rendered in that case:

> In [*Graves*], we held that a claimant who was an escaped prisoner was not entitled to workers' compensation benefits because to grant him benefits would have been to reward him for his prison escape, and was an absurd and unreasonable result and contrary to the General Assembly's intention to provide compensation for work-related injuries. In so holding, however, we expressly limited that holding to escaped prisoners stating that:
>
>> [W]e expressly limit our holding to the proposition that an escape from official detention renders a claimant ineligible for benefits under the Act. We do not hold that any other violation of law committed prior to employment leads to a similar result. This holding balances the legitimate needs of employees with society's interest in ensuring that the workmen's compensation system is not used to the advantage of prison escapees.

*Id.* at 1038–39 (*quoting, Graves*, 668 A.2d at 609) (footnote omitted).

The court then declined to extend the holding in *Graves* to unauthorized aliens, explaining that "we specifically limited the *Graves* holding to escaped convicted criminals only, not illegal aliens who upon detection would normally be deported from the United States." *Id.* at 1039. Moreover, the court also disagreed with Reinforced Earth's position that it would serve " 'public policy' " to deny workers' compensation benefits to unauthorized aliens merely because of their immigration status. Id. The court reasoned that "all that would do is

suspension, to allow Claimant to continue receiving benefits when he is no longer disabled is a violation of its Fourteenth Amendment rights. The Commonwealth Court rejected both of these arguments. *The Reinforced Earth Company v. Workers' Compensation Appeal Bd. (Astudillo)*, 749 A.2d 1036, 1037–38, 1040–41 & n. 6 (Pa.Cmwlth.2000). Reinforced Earth did not preserve these issues in the present appeal. Therefore, we will not discuss them.

reward an employer who failed to properly ascertain an employee's immigration status at the time of hire", *id.,* and "potentially subvert any public policy against illegal immigration because employers may actively seek out illegal aliens rather than citizens or legal residents because they will not be forced to insure against or absorb the costs of work-related injuries." Id. (footnote omitted).

In a footnote to this passage, the court "not[ed] that [Reinforced Earth] did not produce any evidence of its investigation into Claimant's immigration status at the time he was hired." *Id.* at n. 4.

Turning to Reinforced Earth's contention that Claimant's benefits should be immediately suspended because he is unavailable for employment due to his immigration status, the court stated that before a suspension may be effected, Reinforced Earth must establish Claimant's earning power by showing that he can perform other work. The court determined that because it would be useless to require Claimant to interview for jobs that he may not accept due to his immigration status, Reinforced Earth did not have to produce proof of actual job referrals to establish Claimant's earning power, as is mandated by *Kachinski v. Workmen's Compensation Appeal Bd. (Vepco Constr. Co.),* 516 Pa. 240, 532 A.2d 374 (1987). *Reinforced Earth,* 749 A.2d at 1040. Rather, the court modified *Kachinski* to accommodate the facts in this case and decided that "all that needs to be shown is evidence of earning power similar to Act 57." [6] *Id.* & n. 5. Finding that Reinforced Earth presented no evidence as to the type of work that did not involve climbing or heavy lifting that Claimant could perform, the court held that Reinforced Earth failed to establish its right to a suspension of Claimant's benefits. *Id.* at

6. "Act 57" is the Act of June 24, 1996, P.L. 350, No. 57 § 4. An employer's burden of proof in this regard has been modified by Act 57. It would appear that Act 57 permits an employer to establish job availability through "expert opinion evidence which includes job listings with agencies of the department, private job placement agencies and advertisements in the usual employment area." 77 P.S. § 512(2). Act 57's changes, however, apply only to injuries that were sustained on or after its effective date. *See* Act of June 24, 1996, P.L. 350, No. 57 § 32.1(a). Claimant's injury pre-dated Act 57.

1040–41. Accordingly, the court affirmed the Board's decision in all respects. *Id.* at 1041.

■ This court granted Reinforced Earth's Petition for Allowance of Appeal. In workers' compensation cases, we must affirm the adjudication below, unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed or that any necessary finding of fact is not supported by substantial evidence of record. 2 Pa.C.S. § 704; *Volterano v. Workmen's Compensation Appeal Bd. (Traveler's Ins. Co., et al.)*, 536 Pa. 335, 639 A.2d 453, 455–56 (1994).

■ Reinforced Earth argues that the Commonwealth Court erred in refusing to apply to unauthorized aliens "the public policy exception" from the Act's coverage that *Graves* announced. We begin our consideration of this particular argument with several observations about the issue that Reinforced Earth raises. First, Reinforced Earth does not refer to the Act, but looks to this Court for an exception to coverage in Claimant's case. Second, notwithstanding statements made by Reinforced Earth about *Graves* 'holding, we emphasize that in that case, the Commonwealth Court did not use the phrase "public policy exception" or discuss the issue before it in terms of the legal principles that are relevant to a public policy analysis. Rather, in interpreting and applying Section 301 of the Act, 77 P.S. § 431, the court followed the presumption allowed by Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922, that the General Assembly did not intend a result that is absurd or unreasonable. *Graves,* 668 A.2d at 609. Third, in its opinion in *Graves,* the Commonwealth Court made it abundantly clear that its decision is *sui generis,* and not to be read as establishing a rule of wider application. *Id.*

We also emphasize that in asking that Claimant be excluded from the Act because of public policy, Reinforced Earth does not point to a section therein that Claimant fails to meet nor does it argue that Claimant's award violates the legislative

intent underlying a particular statutory provision. Moreover, Reinforced Earth does not direct our attention to any of the legislature's objectives or concerns in passing the Act which would be advanced if Claimant were denied the Act's protections or which the allowance of benefits impedes. Rather, bypassing the Act and the General Assembly altogether, Reinforced Earth asks this Court to declare public policy and prohibit unauthorized aliens from receiving workers' compensation benefits. It is Reinforced Earth's contention that by doing so, we will see to it that illegal behavior goes unrewarded and we will encourage aliens to follow the IRCA.

While we have recognized that the courts have the independent authority to discern public policy, we have repeatedly acknowledged that this authority exists in the absence of legislation. *Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231, 1237 (1998). In *Lurie v. Republican Alliance,* 412 Pa. 61, 192 A.2d 367 (1963), when we refused to expand on provisions of the Election Code regarding accounting procedures for political committees and allow taxpayers to challenge accountings in equity court, and not in the court of quarter sessions as the Code provided, we stated:

> While the courts may in a proper case, in the absence of legislative pronouncement, determine what is against public policy, as stated in [*Mamlin*]: 'It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring.' This is not such a case. More importantly, the legislature has spoken and provided the remedy for resolving such matters and specifically designated the tribunal for such determination. If it intended to give jurisdictional power to a court of equity, such could easily have been expressed . . . .'It is not for us to legislate or by interpretation to add to legislation matters which the legislature saw fit not to include.'

*Id.* at 370 (quoting *Mamlin v. Genoe,* 340 Pa. 320, 17 A.2d 407, 409 (1941), and *Commonwealth ex rel. Fox v. Swing,* 409 Pa. 241, 186 A.2d 24, 27 (1962)) (citations omitted).

■ As we have observed, the Act is the legislature's "definitive pronouncement of the law governing remedies for work-related injuries...." *Shick*, 716 A.2d at 1237. In the Act, the legislature has enacted a comprehensive statutory scheme which carefully balances the respective rights of employees and employers, and provides the relief that a worker will receive when he is injured on the job. Thus, consistent with our long-held view, we will not, in the face of the Act, consider announcing public policy with respect to the receipt of workers' compensation benefits by unauthorized aliens. To do otherwise would be an exercise in judicial legislation, which we will not undertake. Accordingly, there is no basis for granting the relief that Reinforced Earth seeks on the first issue.[7]

Thus, we can conclude that the Commonwealth Court was correct not to deny Claimant benefits as Reinforced Earth requested.[8]

7. With all due respect to our colleagues in the dissent, in our view, the dissent either believes that it is appropriate for this court to declare that unauthorized aliens are excluded from the Act's coverage based on a policy against their employment which it concludes is reflected in the IRCA or would decide a question that Reinforced Earth does not raise. To repeat, Reinforced Earth does not argue that the General Assembly has shown that it intends for the policies which underlie the Act to yield to the policies which underlie the federal immigration statute. Instead, Reinforced Earth argues that this Court should see to it that such a result occurs. Thus, the dissent's willingness to deny unauthorized aliens workers' compensation benefits in the context of this case means that it would grant Reinforced Earth's request that this Court make an extra-statutory declaration of public policy with regard to that matter, which we believe is contrary to our teaching in *Mamlin v. Genoe*, 17 A.2d at 407, or would determine that the General Assembly intends to exclude unauthorized aliens from the Act's coverage, which is an argument that Reinforced Earth does not make.

8. Reinforced Earth also argues that the Commonwealth Court impermissibly burdened it with proving that it conducted a good faith investigation into Claimant's immigration status at the time of hiring. It was, however, in the context of its discussion of public policy that the court referred in a footnote to Reinforced Earth's investigation into such matters. *Reinforced Earth*, 749 A.2d at 1039 & n. 4. The court did not, therefore, impose upon it a requirement to prove that it had undertaken adequate measures to ascertain whether Claimant was legally employable. Rather, the court's observations of Reinforced Earth's investigative efforts were made while it was determining whether public policy should preclude a grant of benefits in this case—a

Because we have rejected the basis for Reinforced Earth's challenge to Claimant's award, we can also conclude that Claimant is entitled to the benefits granted him [9] and turn to Reinforced Earth's contention that it is entitled to a suspension of those benefits under Section 413 of the Act. Section 413 provides in relevant part:

A workers' compensation judge designated by the department may, at any time, modify, reinstate, suspend, or terminate a notice of compensation payable, an original or supplemental agreement or an award of the department or its workers' compensation judge, upon petition filed by either party with the department, upon proof that the disability of an injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or that the status of any dependent has changed. Such modification, reinstatement, suspension, or termination shall be made as of the date upon which it is shown that the disability of the injured employe has increased, decreased, recurred, or has temporarily or finally ceased, or upon which it is shown that the status of any dependent has changed....

77 P.S. § 772.[10]

Reinforced Earth asserts that Claimant's disability is not due to his work-related injury, but is caused by his inability to

determination that we have concluded the court should not have undertaken in the first place.

9.  Reinforced Earth does not contend that Claimant failed to satisfy his burden to prove the essential elements of his claim—that he was an employee who sustained a work-related injury that caused him to be incapable of performing the duties of his time-of-injury job. *See Vista Int'l Hotel v. Workmen's Compensation Appeal Bd. (Daniels)*, 560 Pa.12, 742 A.2d 649, 654 (1999) ("In a proceeding on a claim petition, the claimant bears the burden of establishing a work-related injury rendering the claimant incapable of performing the time-of-injury job."). Throughout this case, Reinforced Earth's argument against Claimant's right to the Act's benefits has been based on his unauthorized alien status.

10.  While this is a proceeding on a claim petition, as opposed to a proceeding on a petition to modify, reinstate, suspend, or terminate an award under Section 413 of the Act, 77 P.S. § 772, we have recognized that workers' compensation judges are authorized to render adjudications on claim petitions which incorporate aspects of modification, suspension or termination where the evidence so indicates without the

work lawfully which arises out of his unauthorized alien status. Accordingly, Reinforced Earth asserts, it is entitled to a suspension without having to meet the evidentiary test we announced in *Kachinski* for an employer who seeks to modify benefits. More specifically, Reinforced Earth focuses on what is commonly referred to as the "job availability prong" of the *Kachinski* test, and contends that proof of job availability is not necessary. In this regard, Reinforced Earth contends that our decision in *Banic,* 705 A.2d at 432, is controlling. Claimant, on the other hand, urges us to adopt the Commonwealth Court's solution to Reinforced Earth's request for a suspension of benefits and require Reinforced Earth to establish job availability without proof of actual job referrals.

■ Our analysis of this issue begins with the concept of disability that is embodied in the Act. Under Pennsylvania law, disability is synonymous with the loss of earning power that is attributable to the work-related injury. *Landmark Constructors, Inc. v. Workers' Compensation Appeal Bd. (Costello),* 560 Pa.618, 747 A.2d 850, 854 (2000). Consequently, we have recognized that "[b]oth capacity to work and availability of work affect the extent of an injured employee's disability (loss of earning power)...." *Dillon v. Workmen's Compensation Appeal Bd. (Greenwich Collieries),* 536 Pa.490, 640 A.2d 386, 392 (1994). Thus, when in *Kachinski,* we delineated the elements that an employer who seeks modification of benefits must prove, we announced a four prong analysis that incorporates both the medical and economic aspects of a disability claim. *Kachinski* requires that:

(1) The employer who seeks to modify a claimant's benefits on the basis that he has recovered some or all his ability must produce medical evidence of a change in condition.

(2) The employer must then produce evidence of a referral (or referrals) to a then open job (or jobs), which fits in the occupational category for which the claimant has been given medical clearance, *e.g.,* light work, sedentary work, etc.

necessity of a formal petition by the employer. *Vista Int'l Hotel,* 742 A.2d at 658 n. 11.

(3) The claimant must demonstrate that he has in good faith followed through on the job referral(s).

(4) If the referral fails to result in a job the claimant's benefits should continue.

*Kachinski,* 532 A.2d at 380.

History has shown, however, that the four prong analysis of *Kachinski* is not to be rigidly applied to situations in which an employer seeks to suspend or terminate a claimant's benefits because the claimant's loss of earning power is no longer caused by the work-related injury. *Banic,* 705 A.2d at 436. That is to say, in such situations, we have allowed a modification of benefits without requiring proof on all of *Kachinski's* prongs. *Id.* at 436–37. Our decisions show that both the facts and the basis upon which the modification of benefits is sought determine which prong or prongs of *Kachinski* need not be met.

By way of example, in *Dillon,* we recognized that the first prong of *Kachinski* requiring medical evidence of a change in condition does not apply if a modification of benefits is not premised on the assertion that the injured employee has recovered some or all of his ability. *Dillon,* 640 A.2d at 392. In *Southeastern Pennsylvania Transp. Auth. v. Workmen's Compensation Appeal Bd. (Henderson),* 543 Pa.74, 669 A.2d 911 (1995), we upheld the referee's decision to suspend the partial disability payments a claimant was receiving based on his testimony that he had voluntarily retired from the labor market. In *Schneider, Inc. v. Workers' Compensation Appeal Bd.,* 560 Pa. 608, 747 A.2d 845 (2000), we concluded that proof of job availability under *Kachinski's* second prong would be pointless and inconsistent with the Act's purpose where a claimant, who regained the capacity for sedentary employment, could never return to work because of a subsequent, non-work related injury. *Id.* at 847.

And finally, in *Banic,* where the employer petitioned for an order suspending the claimant's benefits based on his imprisonment, rather than on any change in the work-related injury he sustained, we determined that the employer would have

been excused from *Kachinski's* first and second prongs under the Act as it existed before Section 306(a)(2), 77 P.S. § 511(2), was amended to allow for the cessation of compensation during an employee's incarceration. We stated:

Here, Employer was not seeking to suspend appellant's benefits because of a change in his medical condition. Rather, Employer sought to suspend appellant's benefits because his incarceration, rather than any change in his work-related injury, was the cause of appellant's loss of earning power.... [D]isability under the Act has long been synonymous with a loss of earning power. Thus, the Act never would have mandated Employer to prove the first prong of Kachinski requiring the production of medical evidence showing a change in condition. Also, Employer was not required to present evidence of available jobs being referred to appellant while he was in prison. Similar to voluntary retirement cases, to require Employer to show available work would be an exercise in futility since appellant's incarceration would have prevented appellant from ever applying for any of the referred positions. Thus, Employer, under the Act as it existed prior to the amendment to Section 306(a)(2), would have been relieved from the second prong of *Kachinski* requiring it to make a showing that jobs were available within appellant's medical clearance and that these jobs were referred to appellant.

*Banic,* 705 A.2d at 436–37 (footnote omitted).

██ With these principles in mind, we turn to the present case. There is no dispute that Claimant as an unauthorized alien cannot apply for or accept lawful employment. We, therefore, agree with Reinforced Earth that Claimant's loss of earning power is caused by his immigration status, not his work-related injury, and that there would be no point in requiring Reinforced Earth to show for purposes of suspension that jobs were referred to or are available to Claimant. Consequently, we conclude that Reinforced Earth does not need to satisfy *Kachinski's* job availability prong in order to prove its entitlement to a suspension of Claimant's benefits, and that the Commonwealth Court erred in imposing upon

Reinforced Earth a requirement in this regard.[11]  In light of the foregoing, we hold that when an employer seeks to suspend the workers' compensation benefits that have been granted to an employee who is an unauthorized alien, a showing of job availability by the employer is not required.

■  That said, however, we cannot further consider whether Reinforced Earth is entitled to the suspension it requests. Although the parties, as well as the Board and the Commonwealth Court fail to mention it, the WCJ did not address Reinforced Earth's contention that Claimant's benefits must be suspended.  We have no way of knowing, and therefore, no way of evaluating on review the basis for the WCJ's refusal to grant Reinforced Earth a suspension.  Simply stated, without an adjudication of record on the matter by the WCJ, meaningful appellate review is impossible.  Accordingly, this case must be remanded to the WCJ for a determination on Reinforced Earth's request that Claimant's benefits be suspended and for a reasoned decision on the issue as 77 P.S. § 834 mandates.

For all of the foregoing reasons, we affirm the order of the Commonwealth Court, which affirmed the Board's order to affirm the WCJ's decision and order granting Claimant's Claim Petition and ordering Reinforced Earth to pay Claimant for total disability and all reasonable and necessary medical expenses.  In view of the record, this case is remanded to the WCJ for further proceedings consistent with this opinion on Reinforced Earth's request for a suspension of benefits.[12]

11.  In light of our ruling, we do not address whether the Commonwealth Court's modification of *Kachinski's* job availability prong along the lines of Act 57 to accommodate the facts was valid in the first place.

12.  Insofar as Reinforced Earth seeks a suspension of all of Claimant's benefits, we find it necessary to clarify that while Reinforced Earth may seek in the circumstances presented a suspension of the total disability compensation Claimant was granted under Section 306(a) of the Act, 77 P.S. § 511, it may not seek a suspension of the medical benefits Claimant was awarded.  At the time that Claimant was injured, Section 306(f) stated that an "[t]he employer shall provide payment for reasonable surgical and medical services, services rendered by duly licensed practitioners of the healing arts, medicines, and supplies, as and when needed ....", and that "[t]he provisions of this section shall apply to injuries whether or not loss of earning power occurs."  77 P.S. § 531(1),(4).  Section 306(f) of the Act continues to provide that "[t]he

Justice NIGRO files a concurring opinion in which Justice SAYLOR joins.

Justice NEWMAN files a dissenting opinion in which Justice EAKIN joins.

Justice NIGRO concurring.

I agree with the majority that Claimant may receive benefits as an illegal alien, that Reinforced Earth does not need to establish that it referred available jobs to Claimant in order for Claimant's benefits to be suspended, and that this case should be remanded to the WCJ for a determination as to whether Claimant's benefits should be suspended. Unlike the majority, however, I believe that the Commonwealth Court properly addressed and considered Reinforced Earth's argument that the court should create a rule barring illegal aliens from receiving benefits based on a public policy against illegal immigration.

Justice SAYLOR joins in the concurring opinion.

Justice NEWMAN.

I respectfully dissent. The Opinion Announcing the Judgment of the Court concludes that it is improper for courts to consider arguments for the creation of an exception, based on public policy, to the General Assembly's statutory scheme for workers' compensation benefits. Relying on this Court's decision in *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998), the Opinion Announcing the Judgment of the Court acknowledges the general rule of judicial self-restraint that is based on traditional notions of the separation of powers: "[w]here the legislature has spoken ... we will not interpret statutory provisions to advance matters of supposed public interest." *Id.* at 1237. That self-imposed caution, however, is inappropriate in the present case, where Appellant bases its public policy argument on the clear Congressional mandate against employment of unauthorized aliens. *See* 8 U.S.C. § 1324.

provisions of this section shall apply to injuries whether or not loss of earning power occurs." 77 P.S. § 531(1)(ii).

Where a party claims that the policy of the Pennsylvania General Assembly, as embodied in the Workers' Compensation Act (WCA), runs afoul of federal legislative policy in the form of the Immigration Reform and Control Act (IRCA),[1] we are not asked to create an exception to a Pennsylvania legislative scheme based on our subjective understanding of what is in the public interest. Accordingly, I believe it appropriate for this Court to consider the argument of Appellant.

The decision of the United States Supreme Court in *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137, 122 S.Ct. 1275, 152 L.Ed.2d 271 (2002), illustrates that where two legislative schemes apply to the same situation, one may have to yield to the higher policy interests served by the other. In *Hoffman Plastic Compounds*, an employer fired employees who were engaged in union organizing activities that were protected by Section 8(a)(3) of the National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(3). One of the fired employees, Jose Castro, was an unauthorized alien, and had fraudulently obtained employment by the submission of forged documents. The National Labor Relations Board (NLRB) determined that the employer's activities violated Section 8(a)(3) of the NLRA, and ordered, *inter alia*, the reinstatement of the employees, including Castro, with backpay. The employer objected that awarding backpay to Castro was contrary to the IRCA. The NLRB rejected this argument holding that, "the most effective way to accommodate and further the immigration policies embodied in [the IRCA] is to provide the protections and remedies of the [NLRA] to undocumented workers in the same manner as to other employees." *Id.* at 1277 (quoting 326 N.L.R.B. at 1060). Following the denial of employer's petition for review, the United States Supreme Court granted *certiorari* and reversed the NLRB.

1. This is not, however, an issue of federal preemption. Appellant does not claim that the IRCA preempts the WCA with respect to workers' compensation benefits for unauthorized aliens. Our concern presently is whether an award of workers' compensation benefits to an unauthorized alien runs counter to federal immigration policy, to which Pennsylvania's legislative scheme should defer.

In reversing, the Court considered the line of decisions that limited the powers of the NLRB, notwithstanding that the conduct of the employer in those cases clearly violated the NLRA and would ordinarily be subject to enforcement action by the NLRB, where the NLRB's exercise of its powers transgressed other federal policies. *See, e.g., Southern S.S. Co. v. NLRB*, 316 U.S. 31, 62 S.Ct. 886, 86 L.Ed. 1246 (1942) (reversing NLRB order that reinstated seamen who engaged in a mutiny in violation of federal maritime law). The Court examined its decision in *Sure–Tan, Inc. v. NLRB*, 467 U.S. 883, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984), which considered the enforceability of an NLRB backpay and reinstatement award against an employer for reporting employees who were undocumented aliens involved in union organization activities to the Immigration and Naturalization Service for deportation. In *Sure–Tan*, the Court considered the Immigration and Nationality Act (INA), the predecessor of the IRCA, and modified an order directing reinstatement of the undocumented aliens on the grounds that this remedy conflicted with the Congressional "objective of deterring unauthorized immigration that is embodied in the INA." *Id.* at 903, 104 S.Ct. at 2814. While recognizing that its decision in *Sure–Tan* had held that undocumented aliens were "employees" for the purposes of the NLRA, the Court in *Hoffman Plastic Compounds* noted that Congressional immigration policy had changed so significantly since the decision in *Sure–Tan* as to require the Court to re-evaluate the conflict between federal labor and immigration policy.

Of particular importance presently, the *Hoffman Plastic Compounds* Court noted, "Under the IRCA regime, it is impossible for an undocumented alien to obtain employment in the United States without some party directly contravening [2] explicit congressional policies." *Id.* at 1283. The Court further stated that it could not "overlook this fact and allow [the NLRB] to award backpay to an illegal alien for years of work

2. That was not true under the INA regime, which had no "provisions . . . making it unlawful for an employer to hire an alien who is present or working in the United States without appropriate authorization." *Sure–Tan*, 467 U.S. at 892–93, 104 S.Ct. at 2809.

not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by criminal fraud." *Id.* The Court held that "awarding backpay to illegal aliens runs counter to policies underlying IRCA, policies the [NLRB] has no authority to enforce or administer" and "would unduly trench upon explicit statutory prohibitions critical to federal immigration policy, as expressed in the IRCA." *Id.* at 1284. In so holding, the Court recognized that the NLRA makes no distinction between unauthorized aliens and other employees, and that the power to award backpay for an NLRA violation is ordinarily within the scope of remedies available to the NLRB, but nevertheless insisted that the Court "never deferred to the [NLRB's] remedial preferences where such preferences potentially trench upon federal statutes and policies unrelated to the NLRA." *Id.* at 1277.

Our present question, therefore, is whether the policy of the Pennsylvania General Assembly to afford workers' compensation benefits to employees injured in work-related accidents should yield to the injunction of Congressional policy against employment of unauthorized aliens. I believe that it should. The primary function [3] of Pennsylvania's workers' compensation system is to serve as a form of social insurance, so that a person injured on the job, who thereby loses "earning power" (i.e., the ability to work), receives income until the person recovers that lost earning power. *See Hankee v. Wilkes–Barre/Scranton International Airport,* 532 Pa. 494, 616 A.2d 614 (1992). In effect, benefits under the WCA stand in the place of the employee's present earning power, which has been diminished by the work-related injury. An unauthorized alien, however, by operation of IRCA, has no legal earning power.

---

3. A secondary function of the workers' compensation system in Pennsylvania is to take the place of the tort system for injuries in the employer-employee arena; the exclusive remedy provisions of the WCA ensure this. *See* 77 P.S. § 481. It would be wrong to conclude, however, that Pennsylvania's workers' compensation scheme is merely an administrative substitute for tort claims against an employer. The scope of the WCA imposes much broader financial responsibility on an employer for an employee's work-related injury—providing benefits irrespective of the employer's fault—than the tort system, with its requirement that liability result from negligence.

Accordingly, I do not believe that the Pennsylvania General Assembly intended the absurd result of supplying social welfare benefits in the form of a wage and employment-benefit substitute to one whom federal law says could not lawfully obtain those wages and benefits in the first place.

The preferable course is to announce, as a matter of public policy consistent with federal immigration law, that unauthorized aliens are not eligible for workers' compensation benefits. One who obtains employment in a manner contrary to federal law should not benefit from that illegal employment relationship.[4] As the author of the Commonwealth Court's opinion in *Graves v. Workmen's Compensation Appeal Board (Newman)*, 668 A.2d 606 (Pa.Cmwlth.1995), I opined that the General Assembly could not have intended that escaped convicts be eligible for workers' compensation benefits because the creation of that employment relationship results from illegal conduct (i.e., an escape from prison). I believe the rationale of *Graves* applies here, and that we should assume that the legislature did not intend to reward those who violate federal law in obtaining employment by allowing them to participate in a social insurance scheme for Pennsylvania workers. Consequently, notwithstanding the absence of an express prohibition, I would interpret Pennsylvania's Workers' Compensation Act in a manner consistent with federal immigration policy and follow our rules of statutory construction that direct us to avoid absurd results. *See* 1 Pa.C.S. § 1922(1) (in ascertaining the intention of the General Assembly in the enactment of a statute, court presumes that the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable).

For these reasons, I dissent.

Justice EAKIN joins this dissenting opinion.

4. That does not leave unauthorized aliens who are injured by the employer's negligence without recourse. If an unauthorized alien is ineligible for benefits under the WCA, it follows that the employer should not enjoy the immunity from suit granted by 77 P.S. § 481. Consequently, the injured worker returns to the protections of the tort system, and may sue the employer for injuries caused by the negligence of the employer.