Jose MORA, Petitioner

v.

**WORKERS' COMPENSATION APPEAL BOARD (DDP CONTRACTING CO., INC., AND PENN NATIONAL INSURANCE), Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 2, 2004.

Decided March 24, 2004.

As Amended March 24, 2004.

John J. Warenda, Morrisville, for petitioner.

Carol A. Crisci, Fort Washington, for respondent.

BEFORE: PELLEGRINI, Judge, and SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

This case is before the Court on remand by order of the Pennsylvania Supreme Court vacating this Court's order in light of its decision in *Reinforced Earth Co. v. Workers' Compensation Appeal Board (Astudillo)*, 570 Pa. 464, 810 A.2d 99 (2002). *DDP Contracting v. Workers' Compensation Appeal Board (Mora)*, 573 Pa. 424, 826 A.2d 830 (2003). In our order, we had affirmed the order of Workers' Compensation Appeal Board (Board) affirming the decision of the Workers' Compensation Judge (WCJ) awarding workers' compensation benefits to Jose Mora (Claimant) from February 14, 1999 to January 1, 2000, but reversed that portion of the Board's order suspending those benefits as of January 1, 2000.

Claimant was employed as a roofer by Gustavo Fernandez (Employer) at $800 per week, who, in turn, was hired as a subcontractor by DDP Contracting (Statutory Employer). While working in the scope of his employment on February 14, 1999, Claimant fell from a roof and broke his right and left wrists as well as his right femur, all of which required surgery. Unfortunately, Employer had no valid workers' compensation insurance coverage. Claimant filed a claim petition against Employer and a joinder petition seeking to join Statutory Employer as his statutory employer under Section 302(a) of the Pennsylvania Worker's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 461.[1]

Before the WCJ, Statutory Employer stipulated to its status as Claimant's statutory employer. Additionally, Claimant testified on his own behalf and indicated that he could not return to work as a roofer because he did not have enough strength in his hands to tear off and carry shingles. However, Claimant did state that on January 1, 2000, he returned to part-time work cleaning offices at $140 per week. Finally, Claimant acknowledged his continued lack of resident alien status in the United States.

Employer presented the report of Ronald Green, M.D. (Dr. Green), an orthopedic surgeon, who examined Claimant on March 6, 2000. In the report, Dr. Green indicated that Claimant had no complaints about his left wrist and some discomfort in his right wrist and in his right thigh, although not enough to stop him from walking and performing tasks. Dr. Greene opined that Claimant had a full and complete recovery from any and all injuries that he suffered on February 14, 1999. Dr. Greene further stated that Claimant was capable of working on a full-time basis

---

1. Section 302(a) of the Act provides, in relevant part, that "[a] contractor who subcontracts all or any part of a contract and his insurer shall be liable for the payment of compensation to the employes of the subcontractor...."

and that he had no limitations as far as sitting, standing, walking, climbing, reaching, squatting, stooping, kneeling, crawling or using his legs for foot controls. The only limitation that Dr. Greene imposed on Claimant in returning to work on a full-time basis was a lifting limitation on his right arm of up to 20 pounds occasionally and 10 pounds frequently, but otherwise, Claimant could use his right hand for repetitive activities such as grasping, manipulation, pushing or pulling.

The WCJ issued a decision granting Claimant's claim petition and awarding him temporary total disability benefits for the period February 14, 1999 through December 31, 1999. However, as of January 1, 2000, the WCJ suspended Claimant's benefits, finding that although Claimant was temporarily partially disabled,[2] he had effectively removed himself from the workforce as of that date by reason of his illegal alien status.

Both Statutory Employer and Claimant appealed the decision of the WCJ to the Board. Statutory Employer sought review of that part of the WCJ's decision awarding indemnity benefits, medical expenses and costs to Claimant for the period of time he was found to be temporarily totally disabled. Statutory Employer asserted that Claimant's immigration status barred his receipt of any benefits under the Act.[3] Claimant argued that the WCJ erred in suspending his benefits when he became temporarily partially disabled because, according to Claimant, his disability

and not his immigration status caused his loss of earning power. On December 21, 2001, the Board affirmed the decision of the WCJ.

Both Statutory Employer and Claimant petitioned to this Court from the Board's order raising the same arguments as they did before the Board. On the issue of whether an undocumented resident alien was entitled to benefits under the Act, we affirmed the Board based on our prior decision in *Reinforced Earth Company v. Workers' Compensation Appeal Board (Astudillo) (Reinforced Earth I),*[4] holding that "a party's status as an illegal alien did not preclude him/her from receiving workers' compensation benefits under the Act." *DDP Contracting, Incorporated v. Workers' Compensation Appeal Board (Mora) (DDP I),* 808 A.2d 592, 594 (Pa.Cmwlth. 2002), *vacated and remanded,* 573 Pa. 424, 826 A.2d 830 (2003). Regarding the suspension of Claimant's benefits as of January 1, 2000, this Court reversed and remanded, holding that an employer "must establish Claimant's earning power by establishing that he can perform other work." *DDP I,* 808 A.2d at 595, *quoting Reinforced Earth I,* 749 A.2d at 1040. Further, we stated that in satisfying this burden, actual job referrals were not necessary as Claimant could not accept any positions due to his status as an illegal alien. Instead, we indicated that "all that needs to be shown is evidence of earning power similar to Act 57."[5] *DDP I,* 808

---

**2.** In finding that Claimant remained temporarily partially disabled, the WCJ accepted the testimony of Claimant as credible regarding ongoing residuals and rejected the testimony of Dr. Greene insofar as he opined that Claimant had fully recovered. The WCJ specifically noted that the restrictions placed upon Claimant by Dr. Greene were indicative of a lack of full recovery.

**3.** Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.1; 2501–2626.

**4.** 749 A.2d 1036 (Pa.Cmwlth.2000), *affirmed in part and remanded,* 570 Pa. 464, 810 A.2d 99 (2002).

**5.** "Act 57" is the Act of June 24, 1996, P.L. 350, No. 57 § 4. Under the Act 57 amendments, in order to establish a reduction in a claimant's disability, an employer need only

A.2d at 595, *quoting Reinforced Earth I*, 749 A.2d at 1040.

■ However, after we issued our opinion in *DDP I*, our Supreme Court, in *Reinforced Earth Company v. Workers' Compensation Appeal Board (Astudillo)* (*Reinforced Earth II*), 570 Pa. 464, 810 A.2d 99 (2002), affirmed this Court's opinion in *Reinforced Earth I*, holding that an illegal alien was entitled to benefits under the Act, but remanded on the suspension of benefits issue, stating that:

> There is no dispute that Claimant as an unauthorized alien cannot apply for or accept lawful employment. We, therefore, agree with [the employer] that Claimant's loss of earning power is caused by his immigration status, not his work-related injury, and that there would be no point in requiring [the employer] to show for purposes of suspension that jobs were referred to or are available to Claimant. Consequently, we conclude that [the employer] does not need to satisfy Kachinski's[6] job availability prong in order to prove its entitlement to a suspension of Claimant's benefits, and that the Commonwealth Court erred in imposing upon [the employer] a requirement in this regard.

In light of the foregoing, we hold that when an employer seeks to suspend the workers' compensation benefits that have been granted to an employee who is an unauthorized alien, a showing of job availability by the employer is not required.

*Reinforced Earth II*, 570 Pa. at 479–480, 810 A.2d at 108.

■ After its decision in *Reinforced Earth II*,[7] our Supreme Court granted Statutory Employer's petition for allowance of appeal and vacated our order with instruction to reconsider the appeal in light of its opinion. Subsequently, Employer withdrew its appeal of the grant of benefits, and now the only issue before this Court is Claimant's appeal from the determination of the Board suspending his benefits.[8]

---

show that the claimant is able to perform his previous work or that he can engage in any other "substantial gainful employment" in his employment area. *See* Section 306(b)(2) of the Act, 77 P.S. § 512(2).

6. Generally, an employer who seeks to modify or suspend a claimant's benefits must demonstrate: 1) medical evidence of a change in condition; and 2) evidence of a referral or referrals to a then-open job that fits in the occupational category for which claimant has medical clearance. The claimant must then show that he or she followed through on the job referrals, and if claimant has done so and the referral fails to result in a job, the claimant's benefits should continue. *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Company)*, 516 Pa. 240, 532 A.2d 374 (1987).

7. The lead opinion was joined in by only three justices, which, while holding that job availability need not be shown, also held that the public policy exceptions to the grant of benefits does not exist. Two justices concurred, stating that they "agree with the majority that Claimant may receive benefits as an illegal alien, that Reinforced Earth does not need to establish that it referred available jobs to Claimant in order for Claimant's benefits to be suspended, and that this case should be remanded to the WCJ for a determination as to whether Claimant's benefits should be suspended" but would have adopted our analysis on the public policy exception, and two justices dissented, stating that they would not have granted benefits based, in part, on public policy grounds. It appears then that five justices would find that an illegal alien can receive benefits but job availability need not be shown to suspend benefits, while four would hold that there can be public policy exceptions to the grant of benefits.

8. Our review is limited to a determination of whether an error of law was committed, whether necessary findings of fact are supported by substantial evidence, or whether

■ Claimant contends that the Board erred in suspending his benefits based upon a finding that he was disqualified from receiving partial disability benefits due to his unauthorized alien status because he remains partially disabled and is unable to return to his former position as a roofer. He argues that *Reinforced Earth II* is not dispositive because, unlike in that case, here, he has secured suitable alternative employment that can serve as a measure of his loss of earning power making him eligible for partial disability benefits. However, the holding of our Supreme Court in *Reinforced Earth II* is that "when an employer seeks to suspend the workers' compensation benefits that have been granted to an employee who is an unauthorized alien, a showing of job availability by the employer is not required." *Reinforced Earth II*, 570 Pa. at 480, 810 A.2d at 108; *Morris Painting, Incorporated v. Workers' Compensation Appeal Board (Piotrowski)*, 814 A.2d 879, 881 (Pa.Cmwlth.2003).[9] By stating that no job availability need be shown, what our Supreme Court, in effect, held is that loss of earning power need not

be shown because it is going to be presumed that Claimant cannot work in this country and there can be no way to measure his/her earning power. Even though, in this case, Claimant found other illegal employment, that position cannot be used as a measure of earning power because only employers who fail to follow the federal immigration laws can offer him a position. With respect to weekly wage benefits, an employer seeking to suspend the benefits of an illegal alien needs only to demonstrate a change in condition.[10] In this case, Statutory Employer established that Claimant was an unauthorized alien and that his loss of earning power was caused by his immigration status, not his work injury. Based upon the holding in *Reinforced Earth II*, the Board did not err in suspending Claimant's weekly wage benefits.

■ However, as to the continuation of payment of medical benefits, in *Morris Painting*, based upon language in *Reinforced Earth II*,[11] we held that an employer can only seek a suspension of weekly

---

constitutional rights were violated. *C. Hannah & Sons Construction v. Workers' Compensation Appeal Board (Days)*, 784 A.2d 860 (Pa.Cmwlth.2001).

9. In *Morris Painting*, this Court addressed "whether an Employer is entitled to a suspension of Claimant's disability benefits in light of our Pennsylvania Supreme Court's decision in [*Reinforced Earth II*]." *Morris Painting*, 814 A.2d at 881. Applying *Reinforced Earth II*, we explained that an employer seeking a suspension of benefits need only demonstrate that a claimant is an unauthorized alien and that he or she has had a change in medical condition.

10. We note that in *Reinforced Earth*, much like the facts in the case before us, the WCJ found that the claimant continued to be disabled and unable to perform the duties of his pre-injury position. Further, claimant was restricted from climbing on scaffolds or ladders and from lifting more than 20 to 25 pounds.

11. In *Reinforced Earth II*, our Supreme Court explained that:

. Insofar as Reinforced Earth seeks a suspension of all of Claimant's benefits we find it necessary to clarify that while Reinforced Earth may seek in the circumstances presented a suspension of the total disability compensation Claimant was granted under Section 306(a) of the Act, 77 P.S. § 511, it may not seek a suspension of the medical benefits Claimant was awarded.

*Reinforced Earth II*, 570 Pa. at 480, 810 A.2d at 109.

Here, at the time that Claimant was injured, Section 306(e) of the Act continued to provide that "in addition to the above service, the employer shall provide payment for medicines and supplies, hospital treatment, services and supplies ...," and that "the provisions of this section shall apply to injuries whether or not loss of earning power occurs." 77 P.S. § 531(1)(ii).

wage benefits and not medical benefits. Therefore, to the extent that the Board and the WCJ granted a suspension of medical benefits, that portion of the order is reversed.

Accordingly, the order of the Board is affirmed in part to the extent it suspends disability benefits, and reversed in part to the extent it suspends medical benefits.

### ORDER

AND NOW, this *24th* day of *March,* 2004, the order of the Workers' Compensation Appeal Board, No. A01–0076, dated December 21, 2001, is affirmed in part to the extent it suspends weekly wage benefits, and reversed in part to the extent it suspends medical benefits.