J-S08011-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANCIS ANTHONY MILLIARD | : | |
| | : | No. 702 WDA 2017 |
| Appellant | | |

Appeal from the Judgment of Sentence November 18, 2016
In the Court of Common Pleas of Elk County Criminal Division at No(s):
CP-24-CR-0000283-2012

BEFORE:   LAZARUS, J., KUNSELMAN, J., and STEVENS*, P.J.E.

MEMORANDUM BY LAZARUS, J.:                        FILED MARCH 23, 2018

Francis Anthony Milliard appeals from the judgment of sentence, entered in the Court of Common Pleas of Elk County, following his conviction by a jury for arson and related offenses.[1]  After review, we affirm.

The trial court summarized the facts of this case as follows:

The incident which results in the filing of the [foregoing] charges against [] Milliard was a fire that occurred on or about May 30, 2012, at the residence of Pauline Smith, located at 521 West Main Street, Ridgeway Township, Elk County, Pennsylvania.  After investigation into the origin and cause of the fire, Pennsylvania State Trooper[] Patrick S. McKackin, Alternate Deputy Fire Marshal[,] revealed gasoline was present.   State Farm Insurance Company also conducted an independent investigation into the

_____

[1] Arson, 18 Pa.C.S.A. § 3301(a)(1)(i); criminal conspiracy, 18 Pa.C.S.A. § 903(a)(1); criminal solicitation, 18 Pa.C.S.A. § 902(a), arson and related offenses, 18 Pa.C.S.A. § 3301(d)(2); two counts of criminal mischief, 18 Pa.C.S.A. § 3304(a)(1), recklessly endangering another person, 18 Pa.C.S.A. § 2705.

_____

*   Former Justice specially assigned to the Superior Court.

fire, and fire investigator Robert G. Stewart [] concluded the cause of the fire was a result of arson.

During the investigation into the fire, it was discovered that Anthony Milliard, Milliard's son, was involved with setting the fire at 521 West Main Street. On July 10, 2012, Anthony Milliard was taken into custody on an unrelated matter. When questioned about [the] 521 West Main Street fire, Anthony Milliard explained his involvement in setting the fire, which was at the direction of Milliard. . . . During his recorded interview, Anthony Milliard explained that on May 30, 2012 around 3:00 a.m., he was awoken by Milliard and told to get ready. The two left their home at 76 Long Level Rd., Ridgeway, Pennsylvania in a blue minivan owned by Milliard[,] at which time Milliard handed a glass jar filled with gasoline, black gloves, and [a] rag to Anthony Milliard and informed [him] he was going to burn down the residence of Michelle Park[.] . . . Milliard and Anthony Milliard proceeded to West Main street in [the] blue minivan, and parked at the West End Supermarket. Milliard pointed out [Parks'] residence, and instructed Anthony Milliard to light her house on fire. While Milliard remained in the minivan, Anthony Milliard went between two houses and poured gasoline on the back of 521 West Main Street, igniting the fire. Once the residence, which he believed to be owned by Park[,] was on fire, Anthony Milliard returned to the minivan where Milliard was waiting. They left the West End Supermarket, taking West Main Street and Grant Street in order to return to 76 Long Level Road. While on Grant Street, Anthony Milliard threw the now[-]empty glass jar and black gloves out the window. It was not until the next day that it was discovered Anthony Milliard lit Patricia Smith's residence, instead of Parks' residence[,] on fire.

\*     \*     \*

Cecilia Jordan, Milliard's Cousin[,] William Thortwart, employed by Milliard, and Scott Lovell, Francis Milliard's cousin[] all interacted with Milliard following the fire. All three have similar testimony that Milliard talked of a "weenie roast" that occurred at [] Parks' house and subsequently how upset Milliard got once he learned that it was not [her] house that caught on fire but instead [] Smith's house. Moreover, there was testimony from [] Thomas Prechtl that places two men in the blue minivan he saw at the West End Supermarket on the night of May 30, 2012. [] Prechtl was up in the early hours of May 30, 2012 as he was unable to

sleep. He watched on as a young man exited the minivan and ran down the street. [] Prechtl also noticed a man with long hair remain in the minivan on the driver side. He was able to see the two men as there is street lighting and the minivan's overhead lighting came on as the younger man left the minivan. [] Prechtl was later shown two pictures of Milliard and he believes this was the driver of the blue minivan, who remained in the minivan as the younger man ran off.

Trial Court Opinion, 7/10/17, at 2-3.

On September 30, 2016, following a three-day jury trial, Milliard was convicted of arson and related offenses. On November 18, 2016, the trial court sentenced Milliard to an aggregate term of imprisonment of 26 to 57 years. On December 22, 2016, Milliard filed a timely post-sentence motion, which the trial court denied in part and granted in part. Accordingly, on April 10, 2017, the trial court issued a subsequent order modifying Milliard's sentence.[2]

On May 8, 2016, Milliard filed a timely notice of appeal. Both Milliard and the trial court have complied with Pa.R.A.P. 1925.[3] On appeal, Milliard

_____

[2] On April 10, 2017, the trial court issued an order denying Milliard's motion for a new trial and granting his motion for modification of sentence, such that his conviction of the offense of arson endangering persons, 18 Pa.C.S.A. § 3301(a)(1)(ii), was merged with the offense of arson endangering persons, 18 Pa.C.S.A. § 3301(a)(1)(i), for the purposes of sentencing. The trial court reasoned that it could not impose consecutive sentences on a defendant convicted of two counts of arson endangering persons based on the same episode or conduct for setting fire to residential property. See Commonwealth v. Lopez, 663 A.2d 746 (1995). Milliard does not challenge the legality and/or discretionary aspects his sentence on appeal.

[3] In Milliard's Pa.R.A.P. 1925(b) statement, he raised two issues: (1) whether the evidence was sufficient to sustain a conviction for arson and related offenses, and (2) whether the verdict was against the weight of the evidence. However, Milliard has abandoned his sufficiency claim in his appellate brief.

raises the following issue for our review: "Whether the lower court erred in entering verdicts against the weight of the evidence as to all charges." Brief of Appellant, at 4.

In Commonwealth v. Clay, 64 A.3d 1049 (Pa. 2013), our Supreme Court set forth the following standards to be employed in addressing challenges to the weight of the evidence:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. Commonwealth v. Widmer, 744 A.2d 745, 751-52 (Pa. 2000); Commonwealth v. Brown, 648 A.2d 1177, 1189 (Pa. 1994). A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Widmer, 744 A.2d at 752. Rather, "the role of the trial judge is to determine that 'notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.'" Id. (citation omitted). It has often been stated that "a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." Brown, 648 A.2d at 1189.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:
>
>> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Brown, 648 A.2d at 1189. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. Commonwealth v.

> Farquharson, 354 A.2d 545 (Pa. 1976). One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

Widmer, 744 A.2d at 753.

> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained:

>> The term "discretion" imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

> Widmer, 744 A.2d at 753 (quoting Coker v. S.M. Flickinger Co., 625 A.2d 1181, 1184- 85 (Pa. 1993)).

Clay, 64 A.3d at 1054-1055.

Instantly, Milliard challenges the credibility of the Commonwealth's witnesses. Specifically, he avers that, generally, the witnesses' testimonies were fatally inconsistent with that of Anthony Milliard, who testified that Milliard did not influence or solicit his actions, and thus the verdict was against the weight of the evidence.

"The weight of the evidence claim is exclusively for the finder of fact, which is free to believe all, part or none of the evidence, and to assess the credibility of the witnesses." Commonwealth v. Lopez, 57 A.3d 74, 80-81 (Pa. Super. 2012) (emphasis added), quoting Commonwealth v. Johnson, 668 A.2d 608, 612 (Pa. 2003). This court "cannot substitute its judgment for that of the jury on issues of credibility." Id. at 81.

Anthony Milliard testified that during the early morning hours of May 30, 2012, he left Milliard's home in Milliard's minivan, and his father went to an unnamed friend's home. Anthony Milliard added that he alone went to the West End Supermarket, parked the minivan there, and proceeded to use gasoline and a burning rag to ignite Smith's home on fire. Milliard's recitation of the facts at trial was inconsistent with his preliminary hearing testimony and a written statement he provided to police on July 10, 2012, wherein he implicated his father's involvement in the events leading to the arson of Smith's home. See N.T., 9/28/16, at 9-13. Additionally, Thomas Prechtl, an eyewitness, refuted Anthony Milliards trial testimony. Prechtl stated there were two occupants, not one, in Milliard's blue minivan, which he saw parked outside the West End Supermarket on the early morning hours of May 30, 2012. Moreover, Ridgway Borough Police Department Officer Bridgette Asti testified that Milliard confided in her that he "lit the fire, that he did it for his dad." Id. at 62. The jury also found credible the testimony of Parks, William

Thorwart, Jordan[4] and Donna Covel, Milliard's then girlfriend, all of whom corroborated the facts implicating Milliard's involvement in the arson of Smith's home.

Herein, in reaching its verdict, the jury credited the foregoing witnesses' testimony over that of Anthony Milliard, and thus, we may not disturb the jury's credibility determination in this regard. Lopez, supra. The record supports the trial court's reasoning, and we discern no abuse of discretion in the trial court's decision to deny relief on Milliard's challenge to the weight of the evidence. See Commonwealth v. Champney, 832 A.2d 403, 408 (Pa. 2003) (where trial court has ruled on weight claim, appellate court's review is limited to whether trial court palpably abused its discretion in ruling on weight claim). Accordingly, Milliard's weight claim must fail.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/2018

_____

[4] Thorwart and Jordan both testified to Milliard's use of the term "weenie roast" in reference to a fire that he believed was occurring at Parks' home. See N.T. Trial, 9/28/16, at 22, 28. Jordan further testified that Milliard was "kind of angry" upon learning that Parks' home was not on fire, id. at 22, and Thorwart added that he did not believe Milliard and Parks got along. Id. at 29.