RAJEH, Appellant,

v.

STEEL CITY CORPORATION et al., Appellees.

[Cite as *Rajeh v. Steel City Corp.*, 157 Ohio App.3d 722, 2004-Ohio-3211.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 03–MA–102.

Decided June 15, 2004.

724

Boyd, Rummell, Carach & Curry and Matthew N. Bins–Castronovo, for appellant.

Stefanski & Associates and Janice T. O'Halloran; Jim Petro, Attorney General, and Mary Ann O. Rini, Assistant Attorney General, Workers' Compensation Section, for appellees.

GENE DONOFRIO, Judge.

{¶ 1} Plaintiff-appellant, Ghassan Rajeh, appeals from a Mahoning County Common Pleas Court decision awarding summary judgment in favor of defendants-appellees, Steel City Corporation ("Steel City") and the Administrator of the Bureau of Workers' Compensation.

{¶ 2} Appellant is a citizen of Lebanon. He has been in the United States since 1980. In 1981, he was given the status of lawful permanent resident. However, in 1988, he was convicted in federal district court of conspiracy to distribute heroin, an aggravated felony, and served at least five years of an eight-year prison term. Due to his conviction, appellant was found to be "deportable" by an immigration judge. Thus, as of February 26, 1993, appellant was ordered to be deported to Lebanon. He appealed this decision, which was upheld by the Board of Immigration Appeals and the Sixth Circuit Court of Appeals. Appellant was ordered to appear for deportation on two occasions, in 1995 and 1999. He failed to appear at either. He was arrested for failing to appear for deportation and then petitioned the Board of Immigration Appeals in March 1999 for relief from deportation pursuant to the Convention Against Torture. The board granted appellant's request for protection and ordered his deportation deferred on September 6, 2001.

{¶ 3} During the time that appellant's deportation order was active, he obtained a job at Steel City in March 1997. He did not inform Steel City of his deportation status. Appellant claims that he was injured on June 30, 1997, while moving a skid at Steel City. He filed a claim for workers' compensation on November 20, 1997. The claim was initially allowed. However, Steel City later learned of appellant's alien status. It then petitioned the Industrial Commission to deny appellant workers' compensation benefits. The case was reexamined by a district hearing officer and then a staff hearing officer, both of whom concluded that appellant was not entitled to benefits. The district hearing officer concluded that while Ohio law does not preclude illegal aliens from participating in the Workers' Compensation Fund, appellant was not entitled to payments for temporary total disability because he was unable to return to work, since he could not be legally employed per federal law. However, the staff hearing officer concluded that appellant was not entitled to participate in the Workers' Compensation Fund because he was not a "qualified alien" eligible to receive state public benefits within the meaning of Section 1621(a)(c), Title 8, U.S.Code, and was an "unauthorized alien" under Section 1324(a)(h)(3) and 1231(a)(7), Title 8, U.S.Code, which precluded him from entering into a legal employee/employer relationship with Steel City.

{¶ 4} Appellant appealed to the Industrial Commission, which refused the appeal. On September 11, 2002, appellant filed a notice of appeal in the trial court from the Industrial Commission's decision denying his participation in the Workers' Compensation Fund. On May 14, 2003, the trial court issued a one-line judgment entry sustaining appellees' motion for summary judgment. Appellant filed his timely notice of appeal with this court on June 13, 2003.

{¶ 5} Appellant raises two assignments of error, both alleging summary judgment was improper, which will be addressed together. They state:

{¶ 6} "The trial court erred in sustaining defendant-appellee Steel City Corporation's motion for summary judgment, in light of the clear and unresolved issues of fact of whether the plaintiff-appellant was an 'employee' of Steel City on June 30, 1997, the day of the injury."

{¶ 7} "Even if no issue of fact is present, the trial court erred in sustaining defendant-appellee Steel City Corporation's motion for summary judgment, because federal and state law favored with plaintiff-appellant."

{¶ 8} Appellant first argues that an issue of fact exists regarding whether he was an "employee" at the time he incurred his injury.

{¶ 9} Although appellant claims that an issue of fact exists as to whether he was an employee, the facts are not in dispute. The dispute between the parties is whether appellant fits the definition of "employee" in the workers' compensation statute, thus entitling him to participate in the Workers' Compensation Fund and whether federal law precludes such participation. Thus, we must resolve this issue as a matter of law.

{¶ 10} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.* (1998), 128 Ohio App.3d 546, 552, 715 N.E.2d 1179. Thus, we shall apply the same test as did the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.* (1995), 104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 11} It should be noted that appellant attached copies of the staff hearing officer's decision and the district hearing officer's decision to the complaint and appeal in the trial court. These decisions were never filed with the

727

trial court. Civ.R. 56(C) lists the types of documents a court may consider when ruling on a motion for summary judgment. They include pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact. Civ.R. 56(C). The proper way to introduce evidentiary matter not specifically authorized by Civ.R. 56(C) is to incorporate such evidence by reference in an affidavit pursuant to Civ.R. 56(E). *Robinson v. Springfield Local School Dist. Bd. of Edn.*, 9th Dist. No. 20606, 2002-Ohio-1382, 2002 WL 462860, at ¶ 25. Neither party followed this procedure. However, appellant attached the copies of the decisions to his pleading, and both parties referred to the decisions, appellant in his pleadings and appellees in their motion for summary judgment, thus acknowledging their authenticity. Additionally, neither party objected to the court's considering the decisions. We have held that such evidence may be considered. *Werden v. Ohio Bur. of Workers' Comp.*, 151 Ohio App.3d 815, 2003-Ohio-1222, 786 N.E.2d 107, at ¶ 7. Thus, we will consider the staff hearing officer's and district hearing officer's decisions.

{¶ 12} In order to participate in the Workers' Compensation Fund, an employee must demonstrate that he sustained an injury in the course of and arising out of his employment. R.C. 4123.01(C). Thus, one must be an "employee" in order to participate. R.C. 4123.01(A)(1)(b) defines an "employee" as:

{¶ 13} "Every person in the service of any person, firm, or private corporation, including any public service corporation, that (i) employs one or more persons regularly in the same business or in or about the same establishment under any contract of hire, express or implied, oral or written, *including aliens* and minors * * *." (Emphasis added.)

{¶ 14} Appellant argues that since R.C. 4123.01(A)(1)(b) includes aliens, he was an employee entitled to participate in the Workers' Compensation Fund. Conversely, appellees contend that had the legislature intended to include illegal aliens in this definition, it would have specifically stated so. They assert that the legislature intended to make a distinction between aliens and illegal aliens by not including the latter.

{¶ 15} In examining the meaning of a statute:

{¶ 16} " 'The court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act, and in the absence of any definition of the intended meaning of the words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used.' " *Moore v. Strassel* (Feb. 26, 1998), 4th Dist. No. 97 CA

32, 1998 WL 101354, quoting *Wachendorf v. Shaver* (1948), 149 Ohio St. 231, 36 O.O. 554, 78 N.E.2d 370, paragraph five of the syllabus.

{¶ 17} The statute does not define "alien." Thus, we must give the word its common, ordinary, and accepted meaning. Webster's New World College Dictionary defines "alien" in relevant part as "a foreigner" and "a foreign-born resident in a country who has not become a naturalized citizen." Webster's New World College Dictionary (3d Ed.1997) 34. These common, everyday definitions make no distinction between legal and illegal aliens.

{¶ 18} And according to the rule of statutory construction, "expressio unius est exclusio alterius," an " 'expression of one or more items of a class implies that those not identified are to be excluded.' " *State v. Caynor*, 7th Dist. No. 867, 2003-Ohio-3282, 2003 WL 21448255, at ¶ 16, quoting *State v. Droste* (1998), 83 Ohio St.3d 36, 39, 697 N.E.2d 620. This rule applies to civil and criminal statutes. Id. Appellees argue that the legislature intended to exclude "illegal" aliens because it did not specifically state that the statute applied to such aliens. However, the statute does not include "legal" aliens in its language. Had it done so, then we could conclude that the legislature intended to exclude "illegal" aliens.

{¶ 19} Additionally, R.C. 4123.01(A)(2) defines what "employee" does not mean:

{¶ 20} "(a) A duly ordained, commissioned, or licensed minister or assistant or associate minister of a church in the exercise of ministry;

{¶ 21} "(b) Any officer of a family farm corporation; or

{¶ 22} "(c) An individual who otherwise is an employee of an employer but who signs the waiver and affidavit specified in section 4123.15 of the Revised Code * * *."

{¶ 23} Nowhere in this section is "illegal alien" mentioned as being excluded from the definition of "employee."

{¶ 24} In addition, it becomes even more apparent that had the legislature intended to exclude illegal aliens from collecting workers' compensation, it would have explicitly stated so as it did in the unemployment compensation statute. R.C. 4141.29(J), which sets out the eligibility and qualifications for collecting unemployment, specifically states:

{¶ 25} "Benefits shall not be paid on the basis of employment performed by an alien, *unless the alien had been lawfully admitted to the United States for permanent residence* at the time the services were performed, was *lawfully present* for purposes of performing the services, or was *otherwise permanently residing in the United States under color of law* at the time the services were

performed, under section 212(d)(5) of the 'Immigration and Nationality Act' * * *." (Emphasis added.)

{¶ 26} Thus, in drafting the unemployment compensation statute, the legislature took careful effort to exclude illegal aliens from eligibility. Had the legislature also intended to exclude illegal aliens from collecting workers' compensation, presumably it would have taken the same effort to spell out its intent.

{¶ 27} Furthermore, the Ohio Supreme Court has held that "[n]o distinction can be made between the rights of Americans and aliens under the Workmen's Compensation Act. Alienage does not impair one's rights nor does it establish superior rights." *State ex rel. Papadopoulos v. Indus. Comm.* (1935), 130 Ohio St. 77, 81, 3 O.O. 115, 196 N.E. 780.

{¶ 28} Based on the above reasoning, it is clear that appellant is an "employee" within the statute's meaning and is entitled to recover from the Workers' Compensation Fund. However, a further analysis is warranted due to the federal law that also must be considered in this matter.

{¶ 29} Appellees assert that because of appellant's status as an alien subject to a deportation order, he could not be legally employed in the United States, citing Sections 1231(a)(7) and 1234(a)(h)(3). Since appellant could not be legally employed, appellees argue that he could not be an employee. Additionally, appellees argue that appellant should be precluded from participating in the Workers' Compensation Fund because his own actions preclude him from returning to work. Appellees note:

{¶ 30} "Where an employee's own actions, for reasons unrelated to the injury, preclude her or him from returning to her or his former position of employment, she or he is not entitled to temporary total disability benefits, since it is the employee's own action rather than the injury that precludes return to the former position." *State ex rel. Crim v. Ohio Bur. of Workers' Comp.* (2001), 92 Ohio St.3d 481, 483, 751 N.E.2d 990.

{¶ 31} Since appellant's criminal conviction led to his status as an alien subject to deportation, appellees argue that he is precluded from collecting workers' compensation because he cannot return to work. Appellees point out that according to Section 1324(a), appellant's employment is precluded because it is unlawful for an employer to hire or continue to employ an unauthorized alien.[1]

---

1. Section 1324(a) is now broader and does not provide a specific statement that it is unlawful for an employer to employ an unauthorized alien. It does provide criminal penalties for anyone who, among other things, encourages an alien to reside in the United States, knowing or in reckless disregard of the fact that such residence is or will be in violation of law. Section 1324(a)(1)(A)(iv), Title 8, U.S.Code.

{¶ 32} Appellant contends that appellees' reliance on Chapters 1324 and 1234, Title 8, U.S.Code is misplaced because they apply to employment status in the context of employer liability, not workers' compensation. Appellant contends that these laws have no relevance to a state-law inquiry on the definition of "employee" for workers' compensation purposes.

{¶ 33} The district hearing officer found appellees' argument persuasive with regard to appellant's inability to return to work. He noted that appellant's felony drug conviction led the Immigration and Naturalization Service to issue an order to deport him. He cited *State ex rel. Ashcraft v. Indus. Comm.* (1987), 34 Ohio St.3d 42, 517 N.E.2d 533, for support. In *Ashcraft,* the Ohio Supreme Court concluded that an injured worker was not entitled to temporary total disability payments while he was incarcerated. The court explained that the purpose of the payments was to compensate an injured employee for the loss of earnings he or she incurred while the injury healed. Id. at 44, 517 N.E.2d 533. The court noted that once an injured employee voluntarily removes himself from the work force, he no longer has a loss of earnings because he can no longer return to work. Id.

{¶ 34} The district hearing officer analogized the case of an incarcerated employee to appellant. He noted that appellant's voluntary act of participating in a criminal enterprise resulted in his deportation order, which in turn resulted in his inability to return to the work force. Thus, the district hearing officer concluded, appellant did not suffer any loss of earnings because his felony conviction precludes him from legally obtaining any employment, regardless of any injury.

{¶ 35} The staff hearing officer affirmed the district hearing officer's decision, but for other reasons. As to this argument, the staff hearing officer determined that appellant could not meet the definition of "employee" because he was not eligible for legal employment.

{¶ 36} While the district hearing officer's reasoning may seem persuasive, an incarcerated employee's situation is distinguishable from an alien employee's situation. Suppose an employee is injured on the job and is entitled to collect workers' compensation. The injured employee is subsequently convicted of a crime and incarcerated. Per *Ashcraft,* the employee is no longer permitted to collect workers' compensation because he has now voluntarily removed himself from the work force and cannot return to work because he is physically incarcerated. Thus, he no longer has a loss of earnings. On the other hand, suppose an illegal alien employee is injured on the job. He is not imprisoned. Thus, while he is not legally allowed to work in the United States, he would still be able to work in his own country or possibly another country had he not sustained a work-related injury. Thus, he still suffers a loss of earnings because he cannot return to work anywhere due to his on-the-job injury.

{¶ 37} Furthermore, one of the purposes of the workers' compensation system is to promote a safe and injury-free work environment. *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 615, 23 O.O.3d 504, 433 N.E.2d 572. Employers try to ensure safe workplaces, in part because if an employee is injured at their place of work, the employer bears the cost. However, if illegal aliens were exempt from collecting workers' compensation, underhanded employers might be prone to hire illegal aliens. If illegal aliens were injured, the employer would not lose any money because the aliens could not collect workers' compensation. Therefore, the employer may become lax in workplace safety, knowing it would suffer no consequences if its employees were injured at work. The same cannot be said for incarcerated employees. If an employee is incarcerated, there is no way he can also be at work. Thus, public policy does not support allowing incarcerated employees to collect workers' compensation as it supports allowing illegal alien employees to collect.

{¶ 38} Moreover, further public policy reasons exist for allowing illegal aliens to collect workers' compensation. Other states have acknowledged these reasons in permitting illegal aliens to collect workers' compensation. See *Artiga v. M.A. Patout & Son* (La.App.1996), 671 So.2d 1138; *Gene's Harvesting v. Rodriguez* (Fla.App.1982), 421 So.2d 701; *Lang v. Landeros* (Okla.App.1996), 918 P.2d 404; *Reinforced Earth Co. v. Workers' Comp. Appeal Bd.* (2002), 570 Pa. 464, 810 A.2d 99.

{¶ 39} For example, in *Mendoza v. Monmouth Recycling Corp.* (1996), 288 N.J.Super. 240, 672 A.2d 221, a New Jersey appellate court found that an illegal alien injured on the job was entitled to workers' compensation. The court explained that the basis for the workers' compensation system is the substitution of a statutory remedy for a common-law right of action. Id. at 246, 672 A.2d 221. It noted that the system's purpose is to compensate a worker who has been injured. Id. It drew a distinction between the workers' compensation system and the unemployment compensation system, noting that while the unemployment compensation system is governmentally funded, the workers' compensation system is primarily funded by employers either though their insurance premiums or self-insurance. Id. The court went on to explain that the effect of injury on the worker has nothing to do with his immigration status or citizenship. Id. at 247, 672 A.2d 221. It explained that if a person's capacity to work has been diminished, this disability will continue no matter what country his future employment is in. Id. And the worker's need for medical treatment is a function of the work he already performed and is not affected by his immigration status. Id. The court also reasoned that if it did not allow an illegal alien to collect workers' compensation, workplace safety could be undermined, and employers might be prone to hire illegal aliens. Id. Next, the court noted that illegal aliens

have the right to access the courts and are eligible to sue to redress civil wrongs. Id. at 248, 672 A.2d 221. It concluded that it would be illogical to accord illegal aliens the right to sue for a personal injury but to deny them the right to pursue this substitute remedy. Id. Finally, the court addressed the argument that benefits should be denied to an illegal alien because his employment contract is illegal pursuant to federal law. The court stated that denying these aliens workers' compensation is likely to encourage, rather than discourage, the hiring of illegal aliens thereby disserving the public policy expressed by federal law. Id. Additionally, it reasoned that in the area of personal injury protection coverage, a distinction had to be drawn between work that in and of itself violates the law and work that, although lawful, is performed by a person under a disability to do it. Id. at 248–249, 672 A.2d 221.

{¶ 40} However, in *Granados v. Windson Dev. Corp.* (1999), 257 Va. 103, 509 S.E.2d 290, the Virginia Supreme Court reviewed a decision of its Workers' Compensation Commission denying Granados, an illegal alien, benefits because he misrepresented his immigration status and eligibility for employment in the United States. While the Virginia Supreme Court held that the misrepresentation did not preclude benefits, it affirmed the denial of benefits on other grounds. The employer, like the employer in this case, argued that Granados was not an "employee" within the meaning of the workers' compensation statute because he could not legally gain employment. The court considered whether Granados could meet the definition of employee set out in the Virginia Workers' Compensation Act, which provided that an employee was " '[e]very person, including a minor, in the service of another under any contract of hire.' " Id. at 108, 509 S.E.2d 290, quoting Va.Code 65.2–101. The court concluded that Granados was not in the service of the employer because, under federal law, an illegal alien cannot be lawfully employed in the United States. Id. Therefore, the court concluded, Granados was not eligible to receive benefits because his purported contract for hire was void and unenforceable. Id. at 109, 509 S.E.2d 290.

{¶ 41} Soon after *Granados* was decided, the Virginia legislature amended the definition of "employee" to include "[e]very person, *including aliens* and minors, in the service of another under any contract of hire or apprenticeship, written or implied, *whether lawfully or unlawfully employed.*" (Emphasis added.) Va. Code 65.2–101.

{¶ 42} Thus, the legislature articulated its intent that employees include unlawfully employed aliens.

{¶ 43} Similarly, in *Felix v. Wyoming Workers' Safety & Comp. Div.* (Wyo. 1999), 986 P.2d 161, the Wyoming Supreme Court held that an alien not authorized to work in the United States is not an "employee" under Wyoming law and therefore is not entitled to workers' compensation benefits. The Wyoming

statute at issue defined an "employee" as " 'any person engaged in any extrahazardous employment under any appointment, contract of hire or apprenticeship, express or implied, oral or written, and includes legally employed minors and *aliens authorized to work by the United States department of justice, immigration and naturalization service.*' " (Emphasis sic.) Id. at 163, quoting Wyo. Code 27–14–102(a)(vii). The statute further provided a list of 13 exclusions of persons who were not "employees." Id. Unauthorized aliens were not included in the exclusions. Id. The court concluded that in order to give effect to all language in the statute, an alien not authorized to work in the United States is not an "employee." Id. at 164. The court also looked at the statute's legislative history. It noted that before 1996, the statute merely included "aliens," without reference to authorization to work. Id. But in 1996, the legislature added the phrase "authorized to work by the United States department of justice, immigration and naturalization service," thus evidencing its intent to add the requirement that aliens be authorized to work in the United States to be considered "employees" eligible for workers' compensation. Id.

{¶ 44} The statutory definitions of "employee" considered by the Virginia and Wyoming courts are distinguishable from Ohio's definition. The Virginia statute did not refer to aliens whatsoever. And the Wyoming statute specifically defined employees as including "aliens authorized to work by the United States department of justice, immigration and naturalization service." Ohio's statute, on the other hand, includes "aliens" with no comment on whether they are authorized to work. These differences lend further support to allowing appellant to collect workers' compensation. Because Ohio's definition of "employee" includes aliens, we can only conclude that all aliens are included.

 {¶ 45} Next, appellant argues that appellee failed to show (1) that he was not a qualified alien and (2) that Ohio's Workers' Compensation Fund is a state public benefit. He contends these two elements were required to show that he was ineligible to collect workers' compensation benefits per Chapter 1621, Title 8, U.S.Code. Appellant claims that since he was not deported, he was a qualified alien. Furthermore, he asserts that Ohio's Workers' Compensation Fund is not a state public benefit. He bases this assertion on three points: (1) the fund is not included in Section 1621(c)'s definition of "State or local public benefit"; (2) the fund has many private aspects to it; and (3) state law should control, since workers' compensation is a state concept. Finally, appellant argues that his deportation order is being withheld as is evidenced by his continued presence in the United States.

{¶ 46} In response, appellees argue that federal law limits state benefits to qualified aliens, citing Section 1621(a). Appellees further argue that appellant's resident status was revoked in 1993 when the immigration judge issued an order

of deportation, citing Section 1256(a). At that time, therefore, appellees argue, appellant became ineligible for state benefits.

{¶ 47} Chapter 1621 provides:

{¶ 48} "§ 1621. Aliens who are not qualified aliens or nonimmigrants ineligible for State and local public benefits.

{¶ 49} "(a) In general

{¶ 50} "Notwithstanding any other provision of law and except as provided in subsections (b) and (d) of this section, an alien who is not—

{¶ 51} "(1) a qualified alien (as defined in section 1641 of this title),

{¶ 52} "* * *

{¶ 53} "is not eligible for any State or local public benefit (as defined in subsection (c) of this section)."

{¶ 54} Section 1621(c)(1)(B) defines a "State or local public benefit" as including:

{¶ 55} "[A]ny retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government."

{¶ 56} The staff hearing officer found that these sections precluded appellant from participating in the Workers' Compensation Fund. He found that Ohio's Workers' Compensation Fund is a "State benefit" as defined by Section 1621(c)(1)(B) for three reasons: (1) the fund was created pursuant to R.C. 4123.31, which appropriates money in the state treasury for the Workers' Compensation Fund; (2) R.C. 4123.31 creates two state agencies, the Ohio Bureau of Workers' Compensation and the Industrial Commission, to administer the fund; and (3) R.C. 4123.45 explains that the purpose of the fund is to compensate an injured worker for disability as a result of a work-related injury.

{¶ 57} The staff hearing officer went on to reason that it was necessary to determine whether appellant was a "qualified alien," thus entitling him to a state benefit. A "qualified alien" is "an alien who, at the time the alien applies for, receives, or attempts to receive a Federal public benefit, is—

{¶ 58} "(1) an alien who is lawfully admitted for permanent residence under the Immigration and Nationality Act,

{¶ 59} "* * *

{¶ 60} "(5) an alien whose deportation is being withheld under section 243(h) of such Act * * *." Section 1641(b)..

{¶ 61} The staff hearing officer concluded that appellant was not a "qualified alien" because his deportation order effectively rescinded his resident alien status, and his deportation order was not withheld until after he was injured and filed for workers' compensation. Thus, the staff hearing officer found that appellant was not entitled to receive state public benefits.

{¶ 62} Additionally, the staff hearing officer noted that if Ohio wanted to provide illegal aliens with state benefits, such as workers' compensation, it could do so through enactment of state law pursuant to Section 1621(d). Since Ohio has not enacted such a law, he concluded that Ohio did not intend to provide workers' compensation to an alien subject to deportation.

{¶ 63} We do not find the reasoning of the staff hearing officer persuasive because we find that workers' compensation is not a "State public benefit" as defined by Section 1621(c)(1)(B). In drafting the statute, Congress was sure to include eight specific state or local public benefits. While it did provide for the inclusion of any other similar benefit, it took care to explicitly include such benefits as welfare, unemployment compensation, and food assistance. It chose not to include workers' compensation in this list. Workers' compensation is not a benefit similar to those listed. The listed benefits are either means for the government to assist people with economic hardships until they are able to financially manage on their own, such as welfare and food assistance, or they are an earned benefit, such as retirement. On the other hand, workers' compensation is a substitutionary remedy for a negligence lawsuit. As the Ohio Supreme Court explained:

{¶ 64} "The workers' compensation system is based on the premise that an employer is protected from a suit for negligence in exchange for compliance with the Workers' Compensation Act. The Act operates as a balance of mutual compromise between the interests of the employer and the employee whereby employees relinquish their common-law remedy and accept lower benefit levels coupled with the greater assurance of recovery and employers give up their common-law defenses and are protected from unlimited liability." *Blankenship*, 69 Ohio St.2d at 614, 23 O.O.3d 504, 433 N.E.2d 572.

{¶ 65} Thus, the Workers' Compensation Act is a compromise between employers and employees that eliminates negligence actions against employers and ensures recovery for employees who suffer work-related injuries. Additionally, as stated previously, the other main purpose of the workers' compensation system is to promote a safe and injury-free workplace. Id., 69 Ohio St.2d at 615, 23 O.O.3d 504, 433 N.E.2d 572. Since employers are ultimately responsible for paying workers' compensation claims through insurance premiums or self-insuring payments, they are more likely to keep their workplaces safe for all employees. To refuse to allow illegal aliens injured on the job to recover from

736

the Workers' Compensation Fund would be to encourage the hiring of illegal aliens and downgrade workplace safety. None of the state public benefits listed in Section 1621(c)(1)(B) share these unique characteristics. Hence, because workers' compensation is not a "state or local public benefit" as defined in Section 1621(c)(1)(B), appellant need not be a qualified alien in order to participate in the Workers' Compensation Fund.

{¶ 66} Accordingly, appellant's assignments of error have merit, and he is entitled to participate in the Workers' Compensation Fund.

{¶ 67} For the reasons stated above, the trial court's decision is hereby reversed, and judgment is entered in favor of appellant.

Judgment reversed.

VUKOVICH and DEGENARO, JJ., concur.