[Cite as *Desmond v. Mahoning Cty. Pros. Office*, 2019-Ohio-4089.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
MAHONING COUNTY

Martin Desmond

    Appellant

v.

Mahoning County Prosecutor's
Office

    Appellee

Court of Appeals No. 2018 MA 0109

Trial Court No. 2017 CV 02675

**DECISION AND JUDGMENT**

Decided: October 3, 2019

* * * * *

Subodh Chandra and Sandhya Gupta, for appellant.

Frank H. Scialdone, for appellee.

Gregory A. Gordillo and Jeffrey P. Vardaro, for amicus curiae
Ohio Employment Lawyers Association.

* * * * *

**MAYLE, P.J.**

{¶ 1} Appellant, Martin Desmond, appeals the October 1, 2018 judgment of the

Mahoning County Court of Common Pleas, affirming the decision of the State Personnel

Board of Review ("SPBR"), which dismissed the appeal of his termination by the

Mahoning County Prosecutor's Office ("the prosecutor's office"). In his SPBR appeal,

Desmond claimed that he was terminated by the prosecutor's office in retaliation for making a report under R.C. 124.341—Ohio's whistleblower statute. The SPBR, however, determined that Desmond failed to satisfy the procedural threshold for seeking whistleblower protection under R.C. 124.341 and, for that reason, the SPBR concluded that it did not have the statutory authority (i.e., jurisdiction) to consider his case.

{¶ 2} As explained further below, we find that SPBR misinterpreted R.C. 124.341 when it dismissed Desmond's case for lack of jurisdiction. Under R.C. 124.341, an employee seeking to establish that his or her employer's action was in retaliation for a whistleblower activity must first show that he or she (1) filed a written report, (2) with his or her supervisor, appointing authority, state inspector general, or other appropriate legal official, (3) that identifies "a violation of state or federal statutes, rules, or regulations, or the misuse of public resources." The SPBR imposed additional requirements not contained in the statute, and improperly excluded reported violations of the Ohio Rules of Professional Conduct, which govern the conduct of attorneys in this state, from whistleblower protection under R.C. 124.341. We find that Desmond satisfied the threshold requirements of R.C. 124.341, and Desmond must be given the opportunity to prove his case to the SPBR. Accordingly, we reverse the trial court judgment, and remand for a determination of the merits of Desmond's SPBR appeal.

## I. Background

{¶ 3} Martin Desmond was an assistant prosecutor employed by the Mahoning County Prosecutor's Office. He reported to the elected prosecutor, Paul Gains; the chief

assistant prosecutor, Linette Stratford; and the chief criminal prosecutor, Nicholas Modarelli.

{¶ 4} On April 5, 2017, Gains terminated Desmond's employment. Gains maintains that he did so because Desmond violated various statutes and rules of professional conduct by (1) engaging in communications with adverse parties; (2)knowingly making himself a witness to a lawsuit against the county, his superior, and a fellow assistant prosecutor; (3) uttering false claims of ethical violations against a fellow assistant prosecutor, causing a grievance to be filed against her; (4) wrongfully making false and misleading allegations against a fellow assistant prosecutor to adverse parties; (5) failing to communicate to the appropriate supervisor his belief that a fellow assistant prosecutor engaged in misconduct; and (6) using county equipment and assets to conduct research to assist parties adverse to his client, his superior, and a fellow assistant prosecutor.

{¶ 5} Desmond insists that the real reason his employment was terminated was because he reported misconduct by fellow assistant prosecutor, Dawn Cantalamessa, in her handling of a murder case and a related obstruction-of-justice case. He claims that he was entitled to whistleblower protection under R.C. 124.341.

### A. Desmond's allegations of misconduct

{¶ 6} Desmond's allegations against his co-worker stem primarily from her handling of two related Mahoning County criminal cases: *State v. Marquan White,*

3.

Mahoning Cty. C.P. No. 15-CR-538, and *State v. Kalilo Robinson,* Mahoning Cty. C.P. No. 16-CR-342.

{¶ 7} In *White*, Marquan White was charged with the murder of Antwon Martinez. Kalilo Robinson was the state's key witness. He provided a sworn statement against White and agreed to testify against him. Desmond was initially assigned to *White,* but it was later reassigned to Cantalamessa and assistant prosecuting attorney ("APA"), Shawn Burns.

{¶ 8} Soon after White was indicted, Robinson refused to testify, instead invoking his right to remain silent. According to Desmond, Cantalamessa consulted him because she wished to pursue charges against Robinson for obstruction of justice and tampering with evidence following his unexpected refusal to cooperate. Desmond says that he told Cantalamessa that to do so would be improper because the court had not granted Robinson immunity or ordered him to testify under R.C. 2945.44; in essence, Desmond believed that they would be indicting Robinson for exercising his right to remain silent. Notwithstanding Desmond's advice to Cantalamessa, Desmond alleges that Cantalamessa instructed Burns to present the case to the grand jury. Burns did so, and Robinson was indicted.

{¶ 9} Desmond claims that after Robinson was indicted, Robinson's attorney, James Wise, told Desmond that the indictment was problematic because the grand jury transcripts and bill of particulars demonstrated that the elements of the offenses were not

4.

met.  Desmond says that he reviewed the documents and agreed with Wise, but advised him that he should raise these concerns directly with Gains.

{¶ 10} Wise moved to dismiss the indictment, alleging misconduct by Cantalamessa.  Cantalamessa voluntarily dismissed the indictment without prejudice.  Nevertheless, Robinson remained in jail.  Desmond claims that Cantalamessa argued for Robinson's continued detention as a material witness, insisting that jailhouse phone calls demonstrated Robinson's intention to flee to another state to avoid testifying against White.  Desmond says that he listened to the recordings of the calls himself and disagreed with Cantalamessa's representations of what Robinson said during the calls.  He says that Wise, too, disagreed and filed a petition for writ of habeas corpus, which the Seventh District Court of Appeals granted.  *Robinson v. Green*, 7th Dist. Mahoning No. 16 MA 0134, 2016-Ohio-5688.  Desmond maintains that he talked to fellow APA Ralph Rivera about Robinson's petition and told Rivera that he believed that Robinson was being held unlawfully.

{¶ 11} In the months that followed, Desmond maintains that he ran into Wise around the courthouse and Wise told him that he intended to file an action against Cantalamessa and the prosecutor's office under 42 U.S.C. 1983 ("section 1983 action") based on prosecutorial misconduct.  Desmond insists that he again advised Wise to speak with Gains directly.  Wise ultimately did file a section 1983 action.  Desmond says that before doing so, Wise dropped off an unfiled copy of the complaint at the prosecutor's office, which circulated around the office.

5.

**{¶ 12}** During this general time frame, the Ohio Supreme Court released a decision that Desmond believed may be helpful in securing Robinson's testimony against White. He corresponded with Burns via telephone and Cantalamessa via text, advising them not to dismiss *White*. Cantalamessa told Desmond that she had already done so at Gains's request due to Robinson's lack of cooperation, the section 1983 action, and Robinson's filing of a grievance.

**{¶ 13}** Desmond's concern with the handling of *White* and *Robinson* triggered two "writings": (1) a string of text messages between Desmond, Gains, and Stratford on December 22-23, 2016 ("the text string"); and (2) a nine-page memo from Desmond to Gains dated January 27, 2017 ("the January 2017 memo"). The crucial issue in this appeal is whether the text string and/or the January 2017 memo satisfied the threshold requirements of R.C. 124.341.

*1. The text string*

**{¶ 14}** On December 22, 2016, Desmond corresponded with Gains and Stratford via text message:

> Desmond: Do not let them dismiss Marquan White. This new Ohio Supreme Court case helps us. We can still proceed. State v. Aalim, 2016-Ohio-8278. Just decided.

> Stratford: Are you calling [D]awn on this[.]

> Desmond: I texted Shawn and Dawn. Dawn told me to call Paul. Apparently it's already been dismissed. This is extremely upsetting and

disappointing.  I'm afraid to say more because you'll think I'm being disrespectful or insubordinate, but she mishandled this case.  There is a lot of what she did that you are unaware of.  Much of the claims against her are true and accurate.

Gains:  Marty I need an email from you on what information you have regarding these claims against Dawn [Cantalamessa].  I'm not quite sure what you were referring to with regard to dismissal of the criminal case[.]  A civil suit has been filed so please get me that information in your email as soon as possible[.]

Desmond:  Can I call you in the morning?  I have family in from out of town at my house at the moment.  I will gladly sit down with you and Lynette.

Gains:  You can call me.  But I'm still going to need a memo since I'm conducting an internal investigation into the allegations contained in the civil sui[.] [sic]

Gains:  Suit[.]

Desmond:  Ok.  Can I call tomorrow?  And I will work on memo over the weekend.

Gains:  We can talk tomorrow[.]

**{¶ 15}** On December 23, 2016 text, Gains texted Desmond:

Gains:  Marty something [has] come up with that and I will not be available for a phone conference.  Just prepare the memo and email it to both of us then we can discuss this after we receive the memo[.]

*2.  The January 2017 memo*

**{¶ 16}** In response to Gains's December 22 and 23, 2017 requests, Desmond promised to provide him with a memo regarding his claims against Cantalamessa.  By January 3, 2017, Desmond had not submitted the memo, so Stratford emailed him, instructing him to submit it when he returned to work after his vacation.

**{¶ 17}** On January 24, 2017, Desmond still had not submitted the memo.  Gains emailed him, giving him a firm deadline:

It is now January 24, 2017, and you have not delivered the Memo. I previously informed you that I was "conducting an internal investigation into the allegations contained in the civil suit" filed against the County. If the Memo is already prepared, please forward it to me and Attorney Stratford immediately.  If it has not been prepared, please send your Memo before Friday, January 27, 2017.  The Memo should contain any and all information you have regarding this matter, when you became aware of this behavior, how you came about receiving the information, and a statement as to what facts you possess which lead you to the conclusion that Attorney Krueger mishandled the case and that "[M]uch of the claims against her are

8.

true and accurate." In light of the repeated requests for the Memo, I am left with no alternative but to advise you that I will consider your failure to provide the Memo by Friday, January 27, 2017 as insubordination.

{¶ 18} Desmond submitted the memo to Gains on January 27, 2017. The facts as set forth in section I(A) of this decision are largely taken from Desmond's memo.

## B. The ALJ's report and recommendation

{¶ 19} Desmond appealed the decision to terminate his employment to the SPBR under Chapter 124 of the Revised Code and requested an investigation by SPBR under R.C. 124.56. He alleged that he was a whistleblower and that he had been discharged in retaliation for identifying conduct that violated state or federal statutes, rules, or regulations or was a misuse of public resources.

{¶ 20} On July 13, 2017, an administrative law judge ("ALJ") issued a report and recommendation to the SPBR, recommending that Desmond's appeal be dismissed for lack of jurisdiction. She explained that under R.C. 124.341, to invoke the board's jurisdiction, a civil service employee must demonstrate that during the course of his or her employment, (1) he or she created a written report identifying an alleged violation of state or federal statute, rule, or regulation or misuse of public resources; (2) he or she filed that written report with his or her supervisor; and (3) after filing the report, the employer took disciplinary or retaliatory action against the employee. The ALJ concluded that the writings that Desmond relied on to support the first element of the claim did not constitute a "written report" for purposes of R.C. 124.341.

9.

**{¶ 21}** With respect to the text string, the ALJ opined that even assuming that a transcript of a string of text messages can constitute a written report under R.C. 124.341, Desmond's "texted statements do not provide sufficient detail to be considered a whistleblower report" because "they do not identify any violation of a state or federal statute, rule, or regulation, or the misuse of public resources" and do not allege that Cantalamessa committed a criminal offense.

**{¶ 22}** With respect to the January 2017 memo, the ALJ opined that while there is no indication that Desmond "purposely, knowingly, or recklessly, filed false information," the content and context of his written report make clear that it was not made in good faith because (1) he had knowledge of Cantalamessa's alleged misconduct as early as February 2016, and while he discussed his concerns with coworkers and defense counsel, he did not report his concerns to his supervisors; and (2) Desmond had months to prepare a report, but did not do so until after Gains was already aware of Cantalamessa's alleged misconduct through the filing of Robinson's civil suit and after Gains ordered him to submit a written report. The ALJ found it important that Gains expressed to Desmond the urgency of the situation on December 22, 2016, yet Desmond submitted his memo only after being reminded by Stratford on January 3, 2017, and advised by Gains on January 24, 2017, to submit the report by January 27, 2017, or face charges of insubordination.

**{¶ 23}** The ALJ recommended dismissal of Desmond's appeal for lack of jurisdiction.

10.

### C. SPBR's order

{¶ 24} Desmond objected to the report and recommendation of the ALJ and requested a hearing. The SPBR adopted the ALJ's report and recommendation and supplied additional alternative grounds for dismissing Desmond's appeal.

{¶ 25} First, it agreed with the ALJ that the text string did not constitute a sufficient written report for purposes of R.C. 124.341. It found that Desmond's text was "ambiguous" and only "tangentially" claimed that a fellow APA had "mishandled" a case. The text did not identify a violation of a statute, regulation, or rule; it merely "articulated his uncovering of new case law which may positively impact the fellow APA's case."

{¶ 26} Second, SPBR agreed with the ALJ that the January 2017 memo did not meet the "written report" requirement of the statute. It concluded that (1) Desmond wrote the report only at the command of his employer; and (2) his employer repeatedly requested the memo and Desmond provided it only "under pain of discipline." It ultimately held that "an employee who involuntarily files a written report solely because his employer commanded him to write it (in response to its knowledge that the employee possesses sought-after information) is not a whistleblower within the meaning of R.C. §124.341."

{¶ 27} Third, the SPBR found that the text string and the January 2017 memo did not identify violations of federal or state statutes, rules, or regulations. "At best," it concluded, the "[m]emorandum alleges prosecutorial misconduct that is protected by

absolute immunity." The SPBR explained its view that the judiciary "comprehensively regulates attorney conduct," and it held that "a 'violation' under R.C. 124.341 does not extend to Attorney Rules of Professional Conduct which are wholly regulated by the judiciary and do not independently constitute a crime."

{¶ 28} Finally, the SPBR found that the "content and context" analysis of the ALJ was sound given that the "crux of Desmond's text at the outset was to provide information to avoid dismissal of the [*White*] case, and not to report a violation." The SPBR also expressed that it was "clearly convinced" that "[b]ut for the Employer's persistence * * * Desmond never would have filed any additional written report to satisfy the statute regarding identifying a violation."

{¶ 29} SPBR dismissed Desmond's appeal for lack of jurisdiction and denied his request for an investigation.

## D. The trial court judgment

{¶ 30} Desmond appealed the SPBR order to the Mahoning County Court of Common Pleas. The court found that Desmond was not a "whistleblower" as contemplated by R.C. 124.341, and it agreed with the ALJ and SPBR's analyses in reaching this conclusion. It concluded that the SPBR's decision to dismiss Desmond's appeal for lack of jurisdiction was supported by reliable, probative, and substantial evidence and was in accordance with the law, and it found that the ALJ and the SPBR were not required to hold an evidentiary hearing. It affirmed the SPBR decision.

12.

{¶ 31} Desmond appealed and assigns the following errors for our review:

Assignment of Error #1: The lower court erred in affirming the SPBR's pre-merits "jurisdictional" dismissal of Appellant Desmond's whistleblower appeal, where the SPBR based that dismissal on an interpretation of R.C. 124.341 that added whistleblower-qualification requirements contrary to the statute's plain language, purpose, and history.

Assignment of Error #2: The lower court erred in affirming the SPBR's pre-merits, "jurisdictional" dismissal based on factual assumptions made without affording Desmond an evidentiary hearing, when record evidence contradicted those assumptions and created at least a "genuine issue in dispute" regarding Desmond's intent to report.

Assignment of Error #3: The lower court erred in upholding the SPBR's dismissal, especially without a hearing, when evidence showed that Paul Gain's affidavit—on which Appellees' motion to dismiss was based— made material, inaccurate statements and others outside his personal knowledge.

Assignment of Error #4: The lower court erred in endorsing the ALJ and SPBR's failure to allow Desmond to make a full factual record, and by denying Desmond an oral hearing and the opportunity to introduce additional evidence when he had been afforded no such hearing at the agency level—thus denying his right to due process.

13.

## II. Law and Analysis

{¶ 32} Simply summarized, Desmond claims that the trial court erred in affirming SPBR's dismissal of his appeal on jurisdictional grounds because the SPBR (1) added whistleblower-qualification requirements not found in the statute and removed protections for reports of attorney misconduct; (2) made factual assumptions about disputed issues without affording Desmond a hearing; (3) relied on averments made by Gains in an affidavit that were demonstrably inaccurate, outside his personal knowledge, or not supported by proper documentation; and (4) denied his right to due process by depriving him of the opportunity to make a full factual record.

{¶ 33} In an administrative appeal under R.C. 119.12, the common pleas court reviews the entire record and determines "whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law." *Leslie v. Ohio Dept. of Dev.*, 171 Ohio App.3d 55, 2007-Ohio-1170, 869 N.E.2d 687, ¶ 43 (10th Dist.), citing *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 110-111, 407 N.E.2d 1265 (1980).

{¶ 34} On appeal to this court, we review the common pleas court's decision under an abuse-of-discretion standard. *Leslie* at ¶44, citing *Roy v. Ohio State Med. Bd.*, 80 Ohio App.3d 675, 680, 610 N.E.2d 562 (10th Dist.1992). A trial court abuses its discretion where its decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). An unreasonable decision is one that lacks sound reasoning to support the decision. *Hageman v. Bryan City Schools*,

14.

10th Dist. Franklin No. 17AP-742, 2019-Ohio-223, ¶ 13. "An arbitrary decision is one that lacks adequate determining principle and is not governed by any fixed rules or standard." *Id.*, quoting *Porter, Wright, Morris & Arthur, LLP v. Frutta del Mondo, Ltd.*, 10th Dist. Franklin No. 08AP-69, 2008-Ohio-3567, ¶ 11. And an unconscionable decision is one "that affronts the sense of justice, decency, or reasonableness." *Id.*

**{¶ 35}** Where, however, questions of law are raised on appeal from an administrative agency, "both the common pleas court and the court of appeals exercise plenary powers of review." *Cameron v. Ohio Dept. of Transp.*, 108 Ohio App.3d 20, 23, 669 N.E.2d 874 (6th Dist.1995). The interpretation of a statute is a question of law. *State v. Pariag*, 137 Ohio St.3d 81, 2013-Ohio-4010, 998 N.E.2d 401, ¶ 9.

**{¶ 36}** With this standard of review in mind, we consider Desmond's assignments of error.

### A. Whistleblower-qualification requirements added by the SPBR.

**{¶ 37}** In his first assignment of error, Desmond argues that SPBR altered the plain language and purpose of R.C. 124.341 by (1) adding a motive requirement not found in the statute, and (2) "carv[ing] out an exception for attorney-misconduct reports." He maintains that the trial court wrongly adopted the SPBR's position that "an employee who involuntarily files a written report solely because his employer commanded him to write it (in response to its knowledge that the employee possesses sought-after information)" is not a whistleblower. He claims that the trial court also erred by adopting SPBR's position that "a 'violation' under R.C. 124.341 does not extend to Attorney Rules

15.

of Professional Conduct which are wholly regulated by the judiciary and do not independently constitute a crime."

{¶ 38} R.C. 124.341 provides, in pertinent part:

(A) If an employee in the classified or unclassified civil service becomes aware in the course of employment of a violation of state or federal statutes, rules, or regulations or the misuse of public resources, and the employee's supervisor or appointing authority has authority to correct the violation or misuse, the employee may file a written report identifying the violation or misuse with the supervisor or appointing authority. * * *

If the employee reasonably believes that a violation or misuse of public resources is a criminal offense, the employee, in addition to or instead of filing a written report or complaint with the supervisor * * * may report it to a prosecuting attorney * * *.

(B) Except as otherwise provided in division (C) of this section, no officer or employee in the classified or unclassified civil service shall take any disciplinary action against an employee in the * * * (1) Removing or suspending the employee from employment * * *.

(C) An employee in the classified or unclassified civil service shall make a reasonable effort to determine the accuracy of any information reported under division (A) of this section. The employee is subject to disciplinary action, including suspension or removal, as determined by the

employee's appointing authority, for purposely, knowingly, or recklessly reporting false information under division (A) of this section.

(D) If an appointing authority takes any disciplinary or retaliatory action against a classified or unclassified employee as a result of the employee's having filed a report or complaint under division (A) of this section, the employee's sole and exclusive remedy, notwithstanding any other provision of law, is to file an appeal with the state personnel board of review within thirty days after receiving actual notice of the appointing authority's action. If the employee files such an appeal, the board shall immediately notify the employee's appointing authority and shall hear the appeal. The board may affirm or disaffirm the action of the appointing authority or may issue any other order as is appropriate. The order of the board is appealable in accordance with Chapter 119. of the Revised Code.

* * *

{¶ 39} The ALJ and SPBR—and the trial court in adopting their analyses—correctly recognized that an employee who seeks to invoke the protection of R.C. 124.341—and SPBR's jurisdiction—"must show:  (1) a written report (2) transmitted to his/her supervisor, appointing authority, the state inspector general, or other appropriate legal official which; (3) identifies a violation of state or federal statute, rule, or regulation, or a misuse of public resources."  (Internal citations and quotations omitted.) *Ressler v. Ohio Dept. of Transp.*, 10th Dist. Franklin No. 09AP-338,

2009-Ohio-5857, ¶ 14.  "Only after meeting the procedural threshold of demonstrating that he or she filed a written report does an employee have the opportunity to establish the employer's action actually was retaliation for whistleblowing activity."  *Id.*

{¶ 40} Importantly, a written report under R.C. 124.341 "need not necessarily cite to the particular statute that was violated * * *."  *Vivo v. Ohio Bur. of Workers' Comp.*, 10th Dist. Franklin No. 09AP-110, 2009-Ohio-6417, ¶ 25.  Moreover, "[a]n employee is not required to prove that an actual statutory violation occurred, only that she reasonably believed a statutory violation occurred."  *Hageman*, 10th Dist. Franklin No. 17AP-742, 2019-Ohio-223, at ¶ 16.

{¶ 41} The ALJ and SPBR concluded that neither the text string nor the January 2017 memo satisfied the "written report" requirement of R.C. 124.341(A).  The ALJ opined that the "texted statements do not provide sufficient detail," "do not identify any violation of a state or federal statute, rule, or regulation, or the misuse of public resources," and do not allege that Cantalamessa committed a crime.  SPBR agreed with the ALJ and concluded that the text string was "ambiguous," only "tangentially" claimed that Cantalamessa had "mishandled" a case, and articulated only that he had become aware of case law that could positively impact Cantalamessa's case—not that Cantalamessa violated any statute, rule, or regulation.

{¶ 42} As to the more-detailed January 2017 memo, the ALJ and SPBR found that SPBR's jurisdictional requirements were not met because Desmond did not submit the memo in good faith.  They reached this conclusion in reliance on *Haddox v. Ohio Atty.*

18.

*Gen.*, 10th Dist. Franklin No. 07AP-857, 2008-Ohio-4355, which held that R.C. 124.341 includes a good-faith requirement, pursuant to which the content and the context of a written report must be considered. The SPBR also found that the jurisdictional requirements were not met because Desmond did not identify a violation of any state or federal statute, rule or violation.

{¶ 43} The ALJ and SPBR's conclusion that Desmond lacked good faith was based on their findings that (1) Desmond wrote the report involuntarily at the command of his employer; (2) his employer repeatedly requested the memo and Desmond provided it only "under pain of discipline"; (3) Gains expressed the urgency of the situation, yet Desmond delayed in submitting the memo; (4) Gains was already aware of the alleged misconduct reported by Desmond; and (5) Desmond failed to raise his concerns with his supervisors until December 2016, when he had been aware of alleged misconduct since February 2016.

{¶ 44} The SPBR's conclusion that Desmond failed to identify violations of state or federal statutes, rules, or regulations was based on its findings that (1) the January 2017 memo alleged only prosecutorial misconduct that is protected by absolute immunity; and (2) "a 'violation' under R.C. 124.341 does not extend to Attorney Rules of Professional Conduct which are wholly regulated by the judiciary and do not independently constitute a crime."

{¶ 45} As to the text string, we agree with the ALJ and the SPBR that those text messages allege only that Cantalamessa "mishandled" a case and that "claims" against

19.

her are true. Simply "mishandling" a case is not tantamount to violating a state or federal statute, rule, or regulation. And while it may be inferred that the "claims" to which Desmond refers are those that were alleged in Robinson's section 1983 action, R.C. 124.341 requires the employee to "identify" the violation of statute, rule, or regulation in his or her written report. The text messages themselves do not contain the detail required to identify a violation. Accordingly, with respect to the text messages, we cannot say that the trial court abused its discretion in affirming SPBR's order.

{¶ 46} But the January 2017 memo presents a different situation. That memo alleges that an APA indicted a person solely because he invoked his constitutional right to remain silent, engaged in vindictive behavior toward him, indicted him for a crime he did not commit, and made misrepresentations to the court concerning the content of jailhouse phone calls in order to persuade it to further detain him. This conduct, if true, may violate numerous state and federal statutes, rules, and regulations, including various rules of professional conduct, 42 U.S.C. 1983, R.C. 2921.44, 2921.45, and 2921.52.

{¶ 47} Desmond maintains that in dismissing his appeal for lack of jurisdiction, the SPBR order purports to (1) add a motive requirement not contained in the statute and (2) create an exception not contained in the statute where the "rule" violated is a rule of professional conduct applicable to attorneys. He contends that under the plain language of the statute, R.C. 124.341 required only that he report, in writing, a rules violation or misuse of resources to specified recipients, and that he make a reasonable effort to determine the report's accuracy.

20.

**{¶ 48}** "When interpreting a statute, a court's paramount concern is legislative intent." *Risner v. Ohio Dept. of Nat. Resources, Ohio Div. of Wildlife*, 144 Ohio St.3d 278, 2015-Ohio-3731, 42 N.E.3d 718, ¶ 12, citing *State ex rel. United States Steel Corp. v. Zaleski,* 98 Ohio St.3d 395, 2003-Ohio-1630, 786 N.E.2d 39, ¶ 12. To determine legislative intent, "we first look to the plain language of the statute." *State v. Gordon,* 153 Ohio St.3d 601, 2018-Ohio-1975, 109 N.E.3d 1201, ¶ 8, citing *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997). Where the statute is clear and unambiguous, we must apply it as written and refrain from adding or deleting words. *Gordon* at *id*; *Risner* at ¶ 12. *See also State v. Thomas*, 106 Ohio St.3d 133, 2005-Ohio-4106, 832 N.E.2d 1190, ¶ 13 ("In construing a statute, a court must implement the intent of the legislature by giving effect to the words used, not by deleting or adding words."); *Spartan Chem. Co. v. Tracy*, 72 Ohio St.3d 200, 648 N.E.2d 819 (1995) ("The court may not add to or delete from the language of applicable statutes.").

**{¶ 49}** R.C. 124.341 contains no exception evidencing the legislature's intent to exclude from whistleblower protection reports of violations of the Ohio Rules of Professional Conduct. While the prosecutor's office insists that "the Legislature by its express language never contemplated purported ethical violations as forming the basis for protected status," and "could have easily done so by adding language to that effect," we find that the opposite is true. That is, if the legislature intended to exclude from R.C. 124.341's protection reports of violations of the Ohio Rules of Professional Conduct, it could have explicitly done so. *See, e.g., Patton v. Diemer*, 35 Ohio St.3d 68, 70, 518

21.

N.E.2d 941, 943 (1988) (finding that given the absence of express exclusion in statute, "it must be presumed that none was intended"); *Rajeh v. Steel City Corp.*, 157 Ohio App.3d 722, 2004-Ohio-3211, 813 N.E.2d 697, ¶ 26 (7th Dist.) (concluding that if in drafting the unemployment compensation statute the legislature had intended to exclude a class of persons from eligibility, it would have taken the effort to spell out its intent). The legislature did not explicitly exclude the Ohio *Rules* of Professional Conduct from the state and federal statutes, *rules*, or regulations that may form the basis for a reported violation under R.C. 124.341.

{¶ 50} Moreover, while Desmond's report certainly alleged violations of the rules of professional conduct, it also alleged civil rights violations and other prosecutorial misconduct prohibited by state and federal statutes. To the extent that the SPBR's dismissal of Desmond's appeal was based on its conclusion that R.C. 124.341 is inapplicable to reports of attorney misconduct, we find that this conclusion was contrary to the plain language of the statute, and the trial court erred as a matter of law when it affirmed the SPBR order on this basis.

{¶ 51} Turning to the good-faith requirement adopted by SPBR, R.C. 124.341 contains no express "good faith" requirement, except to the extent that it requires the employee "to make a reasonable effort to determine the accuracy of any information reported * * *." R.C. 124.341(C). It provides no time frame for making a report, it contains no requirement that a supervisor be unaware of the conduct reported, and it does not specify that the protections of the statute will be lost if an employee is directed by his

22.

employer to make a report. It was, therefore, not appropriate to deny jurisdiction on this basis.

{¶ 52} The prosecutor's office argues that because R.C. 124.341(A) provides that an employee "*may* file a written report," this means that the protections of the statute are inapplicable where an employee *is required* to file a report—either because identifying violations of statutes, rules, and regulations is among his or her job duties or because he or she has been commanded to do so by his or her employer. We disagree with this interpretation. Rather, we interpret the statute to mean that an employee who becomes aware of a violation of statute, rule, or regulation *may*—but is not required to—file a written report identifying the violation.

{¶ 53} Desmond cites *Crawford v. Metropolitan Govt. of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 277–78, 129 S.Ct. 846, 172 L.Ed.2d 650 (2009), where the U.S. Supreme Court rejected a similar argument under 42 U.S.C. § 2000e *et seq.* In *Crawford,* the employee was terminated after she reported sexual harassment in response to an inquiry by her employer. The court concluded that "nothing in the statute requires a freakish rule protecting an employee who reports discrimination on her own initiative but not one who reports the same discrimination in the same words when her boss asks a question." *Id.* at 851. We agree with this reasoning. And we further emphasize, again, that if the legislature intended to protect only employees who identify violations independently—and not on the command of their employer—it could have expressly stated this in the statute.

23.

**{¶ 54}** Accordingly, we find Desmond's first assignment of error well-taken. Having found that SPBR improperly dismissed Desmond's appeal for lack of jurisdiction, we further find that this matter must be remanded for determination of the merits of Desmond's appeal.

### B. SPBR's factual assumptions made without an evidentiary hearing.

**{¶ 55}** In his second assignment of error, Desmond argues that the SPBR improperly dismissed his appeal on jurisdictional grounds without affording him an evidentiary hearing. He claims that SPBR made negative factual assumptions about his motive for filing the report as evidenced by its findings that (1) Desmond's supervisor had to make "repeated attempts to obtain the written information from Desmond"; (2) Gains "finally" ordered him to submit the report "under pain of discipline"; (3) Desmond's reasons for being unable to work on the report until January reflect "excuses"; and (4) Desmond's conduct was "curious" insofar as he failed to "simply spell out basic allegations and supporting facts sooner rather than later and in much more concise but precise terms." He insists that all of these factual issues are in dispute.

**{¶ 56}** Given our conclusion that the trial court erred in affirming the dismissal of Desmond's appeal on jurisdictional grounds, we need not reach this issue. We deny as moot Desmond's second assignment of error.

### C. Gains's affidavit.

**{¶ 57}** Desmond argues in his third assignment of error that he was able to demonstrate that Gains's affidavit—submitted in support of his motion to dismiss—

24.

contained material, inaccurate statements and information outside his personal knowledge, and failed to attach required documents. Desmond claims that he presented evidence of these inaccuracies and other deficiencies in his motion to strike, but the ALJ denied his motion as moot. Desmond insists that to the extent that the ALJ and SPBR relied on Gains's affidavit, the trial court erred in affirming SPBR's dismissal, especially without a hearing.

{¶ 58} Again, given our conclusion that the trial court erred in affirming the dismissal of Desmond's appeal on jurisdictional grounds, we need not reach this issue. We deny as moot Desmond's third assignment of error.

### D. Denial of oral hearing.

{¶ 59} In his fourth assignment of error, Desmond argues that the trial court erred in affirming the SPBR decision where he was denied the opportunity to make a full factual record, to introduce additional evidence, and to cross-examine Gains to test his credibility. Desmond also claims that the ALJ denied his request for a subpoena and for an extension, preventing him access to information relevant to the jurisdictional issues, including whether Desmond was acting within his prosecutorial duties, whether Gains knew about the claims before Desmond reported them, and whether Desmond submitted his memo involuntarily and only under pain of discipline.

{¶ 60} As with Desmond's second and third assignments of error, we need not reach this issue given our conclusion that the trial court erred in affirming the dismissal

25.

of Desmond's appeal on jurisdictional grounds. We deny as moot his fourth assignment of error.

### {¶ 61} Conclusion

{¶ 62} We find Desmond's first assignment of error well-taken. R.C. 124.341 contains no time frame for making a report, it contains no requirement that a supervisor be unaware of the conduct reported, and it does not specify that the protections of the statute will be lost if an employee is directed by his employer to make a report. We also find that R.C. 124.341 does not except from whistleblower protection reports of attorney misconduct under the Ohio Rules of Professional Conduct. The trial court erred in affirming SPBR's dismissal of Desmond's appeal for lack of jurisdiction on these grounds. Our resolution of Desmond's first assignment of error renders moot his second, third, and fourth assignments of error.

{¶ 63} We reverse the October 1, 2018 judgment of the Mahoning County Court of Common Pleas, and remand to SPBR for a determination of the merits of Desmond's appeal. The prosecutor's office is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Arlene Singer, J.                  _____

                                                      JUDGE

Thomas J. Osowik, J.

                                      _____

Christine E. Mayle, P.J.                       JUDGE
CONCUR.

                                      _____

                                                      JUDGE

Judges Arlene Singer, Thomas Osowik and Christine Mayle, Sixth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported

version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.